SILAS KINCAID ET AL *v.* MRS. W. M. TAYLOR, ADM'X ET AL

5-5006                                    445 S. W. 2d 67

Opinion delivered September 22, 1969

[Rehearing denied October 27, 1969]

*Wright, Lindsey & Jennings;* By: *William R. Overton,* for appellants.

*McMath, Leatherman, Woods & Youngdahl,* for appellees.

CONLEY BYRD, Justice. On January 5, 1968, at 5:20 P.M. a collision occurred on Highway 65 at the Plainview entrance to the Pine Bluff Arsenal between a rock truck-trailer unit operated by Eldon H. Chadwick and an automobile driven by appellee Charles L. Burnett in which W. M. Taylor was a passenger. From jury verdicts in favor of appellee Mrs. W. M. Taylor, Administratrix of the estate of W. M. Taylor, deceased, and appellees Charles L. Burnett and wife Helen, which totaled in excess of $100,000.00, appellant Silas Kincaid, d/b/a Kincaid Trucking Co., appeals.

There is ample evidence from which the jury could find that Chadwick was an employee of Kincaid. Consequently the sole issue is whether there was substantial evidence to warrant a finding that at the time of the occurrence Eldon Chadwick was acting within the course or scope of his employment as an employee of Silas Kincaid.

The record shows that Silas Kincaid is a contract rock hauler. As such, he owns several trucks and semi-trailers and employs a number of people in connection therewith. In addition to the truck tractors owned by him, he had working arrangements with persons such as Chadwick, who owned their truck tractors and used Kincaid's trailers. The arrangements recognize that Kincaid would bid on a job to haul rock for so much per ton. Mr. Chadwick's testimony with reference thereto, as abstracted by appellant, is as follows:

"My working agreement with Mr. Kincaid was that

out of one hundred percent of the gross I received seventy-five percent of the revenue. The gross depended upon what I hauled. It was determined by so much a ton. I hauled on various jobs, some of them were Mr. Kincaid's and some of them were other people's. Mr. Kincaid did some of the jobs. Sometimes he would assign me to a job that he didn't bid in. I made an average of about $1,000.00 a month and was paid every week. My driver's check and truck check averaged about $250.00 per week.

"The driver's check was determined by the amount of hours that I worked each day. The truck check was determined by taking out the driver's check, any fuel or anything else I may have gotten from Mr. Kincaid. The amount of my driver's check would vary each week depending on number of hours worked. I got $1.60 an hour for the driver's check for 40 hours and time and a half over 40 hours. Approximately $100.00 to $125.00 per week would be for the driver's check. About $100.00 to $125.00 would be for the tractor."

Under their arrangement, Kincaid furnished the trailer tires and hoist and was also responsible for brake linings and brake drums. Chadwick was responsible for the tires and repairs for the tractor. Chadwick also performed the maintenance on the trailer with reference to lights and stuff like that and had tools for that purpose. It was also his duty to inspect it, keep it up and report any repairs that were needed as well as preventing theft. Part of the agreement between the two was that Kincaid would withhold workmen's compensation, Social Security and income tax from Chadwick's check.

The tractor-trailer units owned by Kincaid were parked at Kincaid's shop each night. Chadwick, however, drove his tractor-trailer unit home each evening. While Chadwick was required to come by Kincaid's office each night to turn in his weight tickets, he did not

always go there in the morning before going to work, but instead reported directly to the rock quarry where the loading was to commence. It was shown that it took about 45 minutes to hook up the trailer if all the equipment were available and that if the equipment were not available, it would take about a half a day.

On the day of the accident Chadwick had hauled rock for a contractor named Olsen under an arrangement between Olsen and Kincaid. Around noon Chadwick was bumped off the Olsen job because Olsen had enough trucks of his own to cover the job. After leaving Olsen's job near Granite Mountain, in the vicinity of Little Rock, Chadwick proceeded toward Kincaid's office but stopped at Jefferson, Arkansas, and visited an old friend. He then stopped at Kincaid's office to turn in his hauling tickets. Chadwick says that at the time this accident occurred (5:20 P.M.) he was going to his house to eat and spend the night and that he had no further work to do that day.

For reversal appellant relies upon *Knighton* v. *International Paper Co.*, 246 Ark. 523, 438 S. W. 2d 721 (1969). However in that case it was shown that King, the alleged employee, was the owner of the vehicle, that he had completed his day's work and that he was on his way home after having stopped to repair his truck. The situation here is not nearly as clear as were the facts in the *Knighton* case. While it is true that Chadwick owned the tractor, it is also clear from the testimony that the rock tonnage could not be moved without the use of the trailer nor could such movement be made if the trailer was not in operating condition both from the standpoint of utility and highway safety. According to the undisputed testimony, these repairs were not ordinarily made at Kincaid's shop but Chadwick generally did them on his own time and with his own tools.

When viewed in the light most favorable to appellee, there is evidence from which the jury may have in-

ferred that Chadwick's responsibilities to Kincaid did not cease with the turning in of his weight tickets. This we believe could be inferred from these facts: Kincaid controlled the use of the trailer at all times; Chadwick could not use his tractor on Kincaid's job without the use of Kincaid's trailer; that Chadwick had some maintenance responsibilities with reference to Kincaid's trailer that were to be performed by him away from Kincaid's shop; that Chadwick owed Kincaid the duty of inspecting the trailer; that it was not practical to unhook the trailer because of the time required to hook it up the next morning; that Chadwick often went directly from his home to the loading site of the next rock haul rather than stopping by Kincaid's shop in the morning; and that the purpose of the arrangement was to move as much tonnage as possible in a given day. Therefore the testimony here is such that the jury could find that the tractor trailer combination was a unit subject to Kincaid's control and that Kincaid received a benefit from the arrangement whereby Chadwick took the truck-trailer unit home at night. See *Helena Wholesale Grocery Co.* v. *Bell,* 195 Ark. 435, 112 S. W. 2d 416, (1938).

Affirmed.