UNION INDEMNITY COMPANY *v.* BENTON COUNTY LUMBER COMPANY.

Opinion delivered June 10, 1929.

*Vol T. Lindsey,* for appellant.

*McGill & McGill,* for appellee.

Butler, J. E. H. Locher and Tom Eads were partners, doing business under the name of The E. H. Locher Construction Company, and as such entered into a con-

tract with the commissioners of Paving District No. 1 to complete the improvement at the contract price of $68,941.31. Afterward it entered into a contract with the board of commissioners of Paving District No. 3 to do the work in that district for the price of $30,865, the two districts being in the town of Bentonville, Arkansas. The Union Indemnity Company executed separate bonds as a surety for the construction company on both of its contracts. Under the contract in each case the commissioners retained in their hands ten per cent. of the sum due the construction company, to be paid when the work was finally accepted, and a maintenance bond, or bond for the maintaining of the work in good condition for a certain number of years, was filed with the commissioners.

Work was begun in District No. 1, and was completed in May, 1927, and on the final estimate there was in the hands of the commissioners the sum of $13,000 due the construction company. The appellee, Benton County Lumber Company, had sold to the construction company, for the completion of the work in District No. 1, an amount of material for which there was a balance due on completion of the work in the sum of $11,523.24. On the 8th day of June, 1927, the appellee lumber company filed a suit in the Benton County Chancery Court against the board of commissioners, E. H. Locher and Tom Eads, the Union Indemnity Company, and Martin & Mueller, a company of Iowa, alleging the facts above stated, and that the board of commissioners refused to pay it the amount of its claim, and that Martin & Mueller were claiming an assignment from said construction company. It alleged that its claim was prior to the claim of said Martin & Mueller, and prayed for the determination of the rights of the claimants to the fund in the hands of the commissioners and for judgment against the indemnity company, "if found to be liable on its bond," and against the commissioners. It was also alleged that Locher and Eads, composing the construction company, were insolvent.

At about the time of the filing of this suit the defendants, Locher and Eads, were engaged in putting down a lot of pavement in the town of Rogers, and the Union Indemnity Company was on their bond for the performance of that contract. The agent of the Union Indemnity Company was at Rogers investigating the condition of affairs of the Locher Construction Company at that place at the time of the filing of the suit. Personal service was had upon all of the defendants except the Union Indemnity Company, and as to that company a warning order was issued and an attorney *ad litem* for it appointed. On the 9th of June all the parties except the Union Indemnity Company met in the town of Rogers in an effort to settle their lawsuit, and during the course of their negotiations one of the attorneys representing the district commissioners was notified by the agent of the indemnity company, over the telephone, that, before that company would do anything further, the amounts due by the construction company to the claimants must be settled, and that the suit must be dismissed with prejudice. Shortly after this communication a settlement was arrived at, by the terms of which Martin & Mueller agreed to and did release their assignment of the final estimate, and the commissioners were authorized by the parties present at the conference to pay the Benton County Lumber Company out of the funds in their hands the sum of $7,748.24 in cash, and to some bank in Bentonville the sum of $5,000, and the remainder to the Locher Construction Company, and it (the construction company) was to, and did, execute its note to the Benton County Lumber Company for the sum of $3,500. To secure this note the construction company made to the lumber company an assignment of the final estimate of District No. 3. It was further agreed that the suit filed should be dismissed with prejudice.

On the second day following, namely, July 11, the agent of the Union Indemnity Company, having been informed of the settlement and the agreement as to the

disposition of the suit, came to Rogers and secured from the clerk of the court a certificate of the order entered of record by which the case was dismissed with prejudice by the plaintiff lumber company. The local agent of the indemnity company residing at Rogers then delivered the maintenance bond, and, this being done, the board of commissioners paid to the Benton County Lumber Company the amount agreed upon, and to the bank the sum of $5,000, and the balance to the construction company.

Work proceeded in District No. 3 to a final completion, the Benton County Lumber Company furnishing material on that contract, consisting principally of cement, and contracting with the construction company that it would credit its account with ten cents for each cement sack returned. When the work in District No. 3 had been completed there was shown by the final estimate to be due the contractors by the board of commissioners the sum of $3,850, and it owed the Benton County Lumber Company and other materialmen and laborers an aggregate sum considerably in excess of the amount due them on the final estimate. The Benton County Lumber Company's balance on open account for material furnished in District No. 3, as claimed by it, amounted to the sum of $3,370.50.

On the 10th day of November, 1927, the Benton County Lumber Company brought suit in the chancery court of Benton County against the Locher Construction Company and against the partners individually, and against the commissioners of District No. 3, who were also the commissioners of District No. 1, by which it sought to recover judgment against the construction company on the $3,500 note executed in settlement of the controversy in District No. 1, less a credit of $1,008.85 for cement sacks returned, and for the balance due it on open account for material furnished in District No. 3 in the sum of $3,370.50, and prayed that its complaint be taken as an equitable garnishment of funds in the

hands of the commissioners. Thereafter, on the 14th day of January, 1928, the Benton County Lumber Company filed an amended complaint, making the same allegations as in the original complaint against the defendants therein named, and making additional allegations as to the defendant Union Indemnity Company, naming it a defendant, and asking for judgment against it on the bonds executed by it to the board of commissioners for the balance claimed from the construction company on the note executed in settlement of the affairs of District No. 1, and for judgment against it on open account, after distribution of the funds in the hands of the commissioners due the construction company for District No. 3.

After the filing of the complaints a number of interventions were filed, the names of the parties intervener being given in the decree subsequently entered in the chancery court. The commissioners of District No. 3 and the Locher Construction Company and the Union Indemnity Company, defendants, filed their separate answers to the amended complaint of plaintiff.

The testimony, while voluminous and involved, presents few, if any, contradictions as to material matters, so much so that the facts recited above are practically undisputed. The court found that the note given by Locher and Eads was properly credited with the amount of the cement sacks returned, and that the balance due on that note was $2,708.22, and that the defendants were due plaintiff the sum of $3,370.50 on open account for material furnished and used in the improvement in District No. 3, and that they are indebted to the interveners as claimed by them in their several interventions, with the exception of the amount due the intervener, Arkola Sand & Gravel Company, the amount of such claim being reduced by the sum of $81.24 in so far as it is a liability against the Union Indemnity Company, but was correct as claimed against the construction company. The court found that, by the terms of the settlement of June 8, 1927, the Union Indemnity Com-

pany was not released from its obligation as surety on the bond in District No. 1, because it knew and accepted the settlement on the conditions named, and that the Union Indemnity Company was estopped from objecting to the application of the funds in the hands of the commissioners of District No. 3 to the payment of the balance due plaintiff by the construction company on its promissory note. The court further found that the plaintiff was entitled to priority in the funds in the hands of the commissioners; that the interveners were due the sums claimed by them—a total of $2,616.76—and rendered judgment in favor of the interveners and against Locher and Eads and the Union Indemnity Company, with interest and costs for said sums. The court further held that, of the $3,850 in the hands of the commissioners, $150 should be retained by the commissioners and $3,650.50 should be paid plaintiff to be applied to the payment of the balance due on the promissory note, and that the balance of said $3,650 be applied on the open account for material furnished in District No. 3, and that the plaintiff have judgment against Locher and Eads and the Union Indemnity Company for the balance, namely, $3,370. The Union Indemnity Company prayed an appeal from the finding and judgment of the court, and the cause is now here on that appeal.

Appellee lumber company claims, and it is earnestly insisted for it by its learned counsel in their able and exhaustive brief, that the evidence sustains the trial court in its finding that the settlement was made with the knowledge and consent of the appellant, that it accepted it, and was bound by its provisions, and thereby estopped from objecting to the application of the funds of District No. 3 to the payment of the note made in settlement of the affairs of District No. 1.

We have carefully examined the testimony, and are unable to discover any facts from which a reasonable inference might be deduced in support of this contention. It is true the evidence is uncontradicted that a

statement of the terms of the settlement was prepared by an attorney representing the appellee lumber company, and given an attorney *for the board of commissioners* for transmission to appellant's adjuster, Mr. McCall, but there is no evidence, direct or circumstantial, that the statement was sent or delivered to Mr. McCall, although, as pointed out by counsel for appellant, if this had been true, there was no reason apparent why proof was not made or attempted, for the attorney to whom the statement was said to have been given was and is a resident of the town of Bentonville. Mr. McCall says he was not informed and did not know the terms of the settlement. It is argued that his appearance in Bentonville and his actions while there discredit his testimony. It is not shown, however, that he had any business in Bentonville on the 11th of June or did anything save to procure the certificate of the clerk of the court to a copy of the written memorandum signed by appellee lumber company and indorsed on the docket entry of the suit filed, and to then go, in company with the local agent of appellant, to one of the commissioners, where the "maintenance bond" executed by appellant was delivered to one of the commissioners. There may be some conflict in the testimony of Mr. McGill and Mr. McCall as to the conversation in the former's office, but this was an immaterial matter, as it related only to the time the memorandum on the docket was made, and it is undisputed that, at the time of the conversation in dispute, the settlement had already been made, and fully executed on the part of Locher and Eads by the execution of the promissory note and assignment of the final estimate of District No. 3, and there was nothing remaining to be done to carry same out but for the commissioners to pay over the $13,000 as agreed and to enter the memorandum of dismissal. There was no occasion at any time for appellant to inquire into all the terms of the settlement; its liability had already attached, and the sums for which it might be liable were fully ascer-

tained. There was nothing it could do except to see the fund of $13,000 was properly distributed, which might have been sufficient to protect it. Its only interest was to insist that the claims for material and labor be paid and the suit against it be dismissed; how this should be accomplished was not important and about which there was no reason for it to inquire.

The parties most interested in the terms of the settlement, and indeed that a settlement be made, were Locher and Eads and appellee lumber company. Appellant was insisting that Locher and Eads pay off the claims due in District No. 1, and, as it was the security on the bond for the Rogers enterprise and on the bond for the contract in District No. 3, and was expected to execute the maintenance bonds, Locher and Eads were anxious to settle satisfactorily the claims in District No. 1 and thus satisfy appellant; for it is clear that the success of their future operations depended upon the cooperation of appellant. .

Appellee lumber company must have been vitally interested in procuring the settlement. There was owing to it by Locher and Eads a large sum of money it was unable to collect; there was an outstanding assignment to Martin & Mueller of the fund in the hands of the commissioners, the legal effect of which was undetermined; the condition of appellee's bond was at that time unknown to appellee lumber company; no "maintenance bond" had been delivered to the board of commissioners, and they were refusing to pay out any of the fund in their hands, and a vexing and uncertain lawsuit was in the "offing." This was a situation from which, it is certain, it desired to be extricated, and there was no persuasion or inducement needed to urge it to endeavor to accomplish this by every reasonable means and effort and by which it might escape probable loss and certain delay. When it agreed to and did accept the terms of the settlement it was pursuing a course dictated by sound business judgment. Here a loss threatened, and a means

was presented by which it could realize a major part of its debt in hard cash and for the remainder substitute an assignment of a probable profit in lieu of the contingencies of a lawsuit. Appellee might assume that Locher & Eads reasonably expected to make a profit out of their contract in District No. 3, and appellee lumber company was willing and did exchange an assignment of this for their claim against appellee, and dismissed the suit "with prejudice." This term has a well recognized legal import; it is the converse of the term "without prejudice," and is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. 4 Words and Phrases (2d Series) p. 1333.

It is doubtful whether appellee had any knowledge of the terms of the settlement, but, if it did, there is a total failure to show any active participation by it in the negotiations or any act upon the part of its agent by which the lumber company was misled or induced to abandon a valuable right or do any other act by which it could be or was estopped to set-off its rights in some future proceeding, for an estoppel can only be predicated on some act or declaration intended to mislead another, who has relied thereon, and acted or refrained from acting to his injury. *Merchants' & Planters' Bank* v. *Citizens' Bank,* 175 Ark. 417, 299 S. W. 753.

In this case the principals have made a settlement by which the debt for which the surety was liable was extinguished and another and different obligation created, to suit their convenience, and the surety, appellant not having consented thereto, was discharged. *Hill* v. *Trezevant & Cochran,* 123 Ark. 244, 185 S. W. 280; *Glenn* v. *Union Bank & Trust Co.,* 150 Ark. 42, 233 S. W. 798; *Snodgrass* v. *Shader,* 113 Ark. 429, 168 S. W. 567. And consent will not be implied by mere knowledge of and acquiescence in the terms of the settlement, but there must be some affirmative action by the party to be bound. *Indiana Lumbermen's Ins. Co.* v. *Stove Mfg. Co.,* 164 Ark.

359, 261 S. W. 917; and see also *DeKlyn* v. *Gould*, 165 N. Y. 282, 59 N. E. 95, and *Rice* v. *Culver*, 172 N. Y. 60, 64 N. E. 761.

As we have seen, there was no conduct on the part of the Union Indemnity Company such as would estop it from insisting that the fund arising on the final estimate be used first in the liquidation of the claims for material and labor, and the decree of the court holding that the appellee lumber company had a priority over the claims of the other materialmen and laborers under its assignment and that the Union Indemnity Company was estopped to insist otherwise, was erroneous.

The evidence shows that the credit of $1,008.85 for cement sacks returned was arbitrarily placed by the appellee lumber company to the credit of the $3,500 note without the consent of Locher & Eads, and in violation of its contract, and that it should have been credited on open account of the appellee lumber company for material furnished District No. 3. *Fidelity & Deposit Co.* v. *Merchants' & Farmers' Bank,* 120 Ark. 519, 179 S. W. 1019; *Herweigh* v. *Hill,* 172 Ark. 1143, 292 S. W. 97.

The Union Indemnity Company executed a bond for the construction company in favor of the commissioners of District No. 3, and we think that because of this it became liable to appellee lumber company and the interveners on their claims against Locher & Eads in District No. 3 in such sum as remains after the application *pro rata* of the fund on their respective claims. The appellee lumber company is due for material furnished for District No. 3, after deducting the credit for cement sacks returned, the sum of $2,361.65, and it is due on the note executed by the construction company the sum of $3,500, with interest, for which it should have judgment against the Locher Construction Company.

As to the intervention of C. D. Haney, the trial court erroneously held that the amount of his claim for material furnished in the work on District No. 3 was $103.39. This is the true amount due the intervener by

the Locher Construction Company, but the evidence shows that some of the items going to make up this amount were for material furnished the construction company and not used in the work in District No. 3. The judgment should go against the construction company for the total amount furnished by C. D. Haney, but the Union Indemnity Company would only be liable for the amount used in the work in District No. 3, which is $67.21. *Central Lumber Co.* v. *Braddock Land & Lumber Co.,* 84 Ark. 560, 105 S. W. 583, 13 Ann. Cas. 11. The findings of the court as to the amounts due the other interveners, we think, are correct as set out in the decree.

The decree of the chancery court is reversed, and remanded with directions to enter a decree in conformity with this opinion.