134

DEAL *v.* DEAL.

4-9689　　　　　　　　　　　　246 S. W. 2d 429

Opinion delivered February 25, 1952.

*Ovid T. Switzer,* for appellant.

*Y. W. Etheridge,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by appellee, Alice Deal, to reform a deed to two lots in Hamburg, Arkansas, by striking therefrom the name of appellant, A. G. Deal, as joint grantee. A. G. Deal appeals from a decree granting the relief prayed.

The parties formerly lived as husband and wife at Hamburg, Arkansas. Appellee negotiated the purchase of the lots in question from the widow and heirs of C. W. Taylor, deceased, who executed and delivered their deed to appellee, as sole grantee, on February 17, 1942. Appellee made a cash payment of $150 on the purchase price and executed two lien notes of $175 each payable in one and two years, respectively, for the balance of the purchase price.

Appellee testified that at the time of the purchase appellant had been gone from home about a year during which time he sent her two checks of $10 each; that she supported herself and their minor children by various jobs, supplemented by aid from the State Welfare Department and certain charitable organizations. She received the $150 which she paid on the purchase of the home from her grandfather's estate. The last payment on the two purchase money notes was made by appellee on December 2, 1942, and she also testified that the notes were paid wholly from her separate earnings.

Appellant, who had been employed in Louisiana, returned to Hamburg in the summer of 1942. On January 18, 1943, the deed of February 17, 1942, was changed by adding the words "and A. G. Deal" after appellee's name wherever it appeared in the deed, and on the same date the altered deed was placed of record.

On January 16, 1948, appellee filed suit for divorce against appellant in the Ashley Chancery Court on the ground of general indignities. The complaint alleged that the parties were "owners of real and personal property, and that they have made an agreement as to the disposition of said property, which should be approved by the Court". In response to the complaint in the divorce action, appellant filed a pleading styled "Waiver, Answer & Agreement" also dated January 16, 1948, which contains a recital as follows: "Plaintiff is to have the use of the house and household furniture so long as she conducts herself in a proper manner and so long as she is unmarried, but if she should remarry, or if she should start conducting herself in a manner unbecoming to a lady and a mother, in such a manner that she is placing her reputation in question, then defendant is to take immediate possession of the house, furniture, and children."

On March 24, 1948, a decree was entered granting appellee a divorce, custody of their seven minor children and support money for the children of not less than $50 per month. The decree also provided that each party should "have absolutely" certain specified items of per-

sonal property. The possession and use of the home and furniture were awarded to appellee as set out in the agreement, *supra.*

Appellant subsequently remarried and the instant suit was brought by appellee on September 23, 1950. She alleged in her complaint and testified that appellant forced her to have his name added to the deed in January, 1943, against her will and by threatening her life if she refused. She also related other acts of mistreatment and abuse at the hands of appellant about the time the deed was altered.

Appellant alleged in his answer that appellee voluntarily altered the deed and by such action and her failure to assert her claim in the 1948 divorce action she was estopped from claiming absolute title to the property. He also alleged and testified that the lots were bought under their agreement to purchase jointly; that he was working in Louisiana at the time and left the details of the purchase to appellee who had the deed made to herself as sole grantee without his knowledge or consent; that while working in Louisiana he sent part of his wages to appellee which she used to support herself and their children and to pay the two purchase money notes; that in January, 1943, he discovered that his name was not in the deed and discussed the matter with appellee who stated that his name had been omitted by mistake; and that she voluntarily had his name added as joint grantee.

W. C. Woods testified that he worked with appellant in Louisiana for about eight months in 1942 and issued his personal checks to appellant at different times so the latter could send money to appellee. He estimated that such checks totaled more than $200.

The cashier of the bank where the two purchase money notes executed by appellee were paid testified that appellee made all the payments and that none were made by checks of the appellant.

Thus the evidence is in sharp dispute as to whether appellee voluntarily altered the deed and as to whether

appellant paid any part of the purchase price. Appellee stated that she paid all taxes and insurance on the property except for one year, while appellant stated that all taxes and insurance were paid by him. No tax receipts were introduced. In January, 1948, appellee also paid a Hamburg bank $77 which represented the balance due on a note for $300 borrowed by appellant and to secure the payment of which the property in controversy had been mortgaged. She also made extensive repairs to the property costing more than $700, part of which had been paid by her daughter and a balance of $300 still owing to FHA at the time of the trial was being paid by a son.

The chancellor found that the legal effect of the answer of appellant was to allege a trust in his favor arising at the time of the purchase from their agreement to purchase the property jointly and his payment of a part of the purchase money. We agree with the court's further finding that appellant failed to establish such trust by that clear, cogent and convincing testimony required in such cases. Appellant paid no purchase money either at the time of or previous to the purchase, and the deed, notes and attendant circumstances tend to support appellee's contention that she paid the entire purchase price.

The chancellor also found that appellee was not estopped to deny appellant's joint interest in the property by alteration of the deed.

Appellant earnestly insists that appellee failed to sustain her claim of duress in the alteration of the deed; that her claim of absolute title to the property was disposed of, or should have been adjudicated, in the 1948 divorce suit; and that by her conduct and delay she is estopped from contesting appellant's interest as joint grantee in the deed. In support of these contentions appellant relies on the cases of *Simmons* v. *Simmons,* 203 Ark. 566, 158 S. W. 2d 42, and *Page* v. *Woodson,* 211 Ark. 289, 200 S. W. 2d 768. In the Simmons case the husband, after delivery of a deed to him as sole grantee, voluntarily and without the knowledge or connivance of his wife, changed the deed by adding her name as joint

grantee. It was also shown that it was his intent to include her name in the deed at the time it was executed and that the consideration was paid from community funds. After his death intestate, the husband's heirs brought suit against the widow to cancel her name from the deed. In holding that the heirs were estopped, we said: "The alteration of the deed here in question did not have the effect of destroying the conveyance or to revest the title in the grantor. As we said in *Faulkner* v. *Feazel*, 113 Ark. 289, 168 S. W. 568: 'It is undisputed that when the deed was acknowledged it was a valid conveyance of the land in controversy, and if it was delivered it conveyed the title to the land there described, and these subsequent interlineations (the proof does not show by whom made) did not operate to defeat the conveyance.'

"We do not hold that the deed here in question had the effect of conveying the title to appellant by reason of the alteration. On the contrary, the title to the land there described vested in him, but his act in altering the instrument by inserting her name as a joint grantee estopped him and his heirs, appellees, from contesting her rights as the survivor."

Thus, in that case there was no evidence of duress, or connivance, on the part of the wife in the voluntary alteration of the deed by the husband. His intervening death resulted in the loss of his testimony and changed conditions which are not present in the instant case.

In *Page* v. *Woodson, supra,* a widow attempted to set aside a divorce decree and property settlement after the death of her former husband on the grounds of duress and fraud, and we held that the evidence was insufficient to sustain the charges; also that the widow was barred by laches. In that case the property rights of the parties were fully adjudicated in the divorce proceeding and we pointed out that the husband, being dead, could no longer speak for himself. In the case at bar appellee is not attempting to set aside the 1948 divorce decree which did not adjudicate title to the property in controversy. The lots were not described in either the pleadings or the

decree entered in the divorce action and the effect of the decree was merely to award possession and use of the property temporarily to appellee.

In *Hix* v. *Sun Insurance Co.,* 94 Ark. 485, 127 S. W. 737, the wife was awarded possession of the family home under a divorce decree very similar to the 1948 decree involved here. The court held that such decree did not preclude her former husband from subsequently asserting his rights to the property as sole owner. In *Johnson* v. *Swanson,* 209 Ark. 144, 189 S. W. 2d 803, we said: ''There are numerous decisions holding that, when property rights are not settled in a divorce action, they may be adjusted in a subsequent, separate proceeding. Some of them are: *Judd* v. *Judd,* 192 Mich. 198, 158 N. W. 948, 160 N. W. 548; *Hicks* v. *Hicks,* 69 Wash. 627, 125 P. 945; *Coats* v. *Coats,* 160 Cal. 671, 118 P. 441, 36 L. R. A., N. S. 844; *Gray* v. *Thomas,* 83 Tex. 246, 18 S. W. 721; *Thomas* v. *Thomas,* 27 Okla. 784, 109 P. 825, 113 Pac. 1058, 35 L. R. A., N. S. 124, Ann. Cas. 1912C, 713. The term 'property rights,' as here used, does not, of course, include the interest, by way of inchoate dower, possessed by the wife in property of her husband, which interest must be determined in the divorce proceeding and is concluded by the decree rendered therein. *Taylor* v. *Taylor,* 153 Ark. 206, 240 S. W. 6.''

Equitable estoppel and laches have been defined in numerous cases. In *Geren* v. *Caldarera,* 99 Ark. 260, 138 S. W. 335, it is said: ''Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.'' We have also held that the party asserting estoppel must have changed his position or acted to his injury in reliance upon the representation or conduct constituting the estoppel. *Thompson* v. *Wilhite,* 131 Ark.

77, 198 S. W. 271; *Union Indemnity Co.* v. *Benton County Lumber Co.,* 179 Ark. 752, 18 S. W. 2d 327.

We have frequently approved the following statement in 5 Pomeroy, Equity Jurisprudence, (3rd Ed.) § 21: "Laches, in legal significance, is not mere delay, but delay that works disadvantage to another. So long as parties are in the same condition, it matters little whether he presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has in good faith become so changed that he can not be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from the loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side, and injury therefrom on the other, it is a ground for denial of relief." See, *Tatum* v. *Arkansas Lumber Co.,* 103 Ark. 251, 146 S. W. 135.

The facts and circumstances here support the chancellor's conclusion that appellee was not estopped to maintain the instant suit. There was no adjudication of title to the property in the 1948 divorce suit. Appellant has not been placed at a disadvantage nor has there been any change for the worse in his position by reason of appellee's failure to sooner assert her claim. There has been no change of title, loss of evidence or intervening equities which require the application of the equitable principles of estoppel and laches.

The decree is affirmed.

WARD, J., dissents.