JESSE PORTERFIELD ET AL v. ESTATE OF P. B. PORTERFIELD, DECEASED

5-6176                                            491 S.W. 2d 48

Opinion delivered February 26, 1973
[Rehearing denied March 26, 1973.]

*Joe W. McCoy,* for appellants.

*J. E. Still,* for appellee.

GEORGE ROSE SMITH, Justice. P. B. Porterfield, aged 90, died in July, 1971, survived by his widow, five sons, and a daughter. In this litigation two of the sons, the appellants, claim ownership of two certificates of deposit that were in their father's possession at the time of his death. The probate court held the certificates to be part of the estate, there having been no completed gift to the appellants. We agree with the probate court.

On April 24, 1968, the elder Porterfield, then 87, went to his bank in Gurdon and purchased for cash the first of the two certificates, the pertinent language of which is as follows:

Savings Certificate of Deposit

No. 0107       Clark County Bank       $12,500.000

Gurdon, Ark. April 24th, 1968.

P. B. Porterfield has deposited in this bank Twelve Thousand Five Hundred & no/100 Dollars, $12,500.00, payable to the order of Jesse Porterfield or Dildy Porterfield, Payee(s), in current funds on the return of this certificate properly endorsed 12 months after date, with interest at the rate of 5% per annum. . .

Automatically Renewable. Checks for interest will be mailed each 12 months.

No interest after three years from date. Non-negotiable.

/s/ Clayton Franklin
Authorized signature.

Not Subject to Check.

Three years later Porterfield purchased the second certificate, on a similar printed form, in the amount of $1,445.01, payable to Jesse Porterfield and Dildy Porterfield. Mr. Porterfield kept the certificates in a box in his home until his death. There is no contention that either certificate was delivered to the sons during their father's lifetime.

The point is not altogether clear, but apparently the two sons knew nothing about the certificates until after their father's death. In 1968, soon after the first certificate was acquired, Porterfield took the two sons to the bank, where they signed a signature card; but according to Clayton Franklin, the president of the bank, that transaction related only to Mr. Porterfield's checking account, which contained about $800 at his death. Mr. Franklin also testified that during Mr. Porterfield's lifetime the bank would not have permitted any of the three men to cash the certificates without all three signatures, but

"if Mr. Porterfield died, in our way of thinking the money fell to the two remaining payees."

The latter assumption by Franklin was incorrect, for the language necessary to create a survivorship interest in the sons did not appear in the certificates. Ark. Stat. Ann. § 67-552 (Repl. 1966); *Washam* v. *First Nat. Bank,* 248 Ark. 984, 455 S.W. 2d 96 (1970); *Cook* v. *Bevill,* 246 Ark. 805, 440 S. W. 2d 570 (1969). In fact, counsel for the appellants state candidly that there is no issue of survivorship in this case.

The question, then, is whether the proof shows completed inter vivos gifts of the two certificates. All the elements of such a gift must be shown by clear and convincing evidence. *Mohr* v. *Hampton,* 238 Ark. 393, 382 S.W. 2d 6 (1964); *Bennett* v. *Miles,* 212 Ark. 273, 205 S.W. 2d 451 (1947). In those cases we pointed out that there must be an actual delivery of the subject-matter of the gift to the donee or to some agent or trustee for him, "with a clear intent to make an immediate present and final gift beyond recall, and at the same time unconditionally releasing all future dominion and control by the donor over the property so delivered."

Here the proof does not establish delivery, either to the two sons or to the bank as an agent to hold the funds for them. The donor's relinquishment of control must be immediate, unconditional, and beyond recall. Here Mr. Porterfield retained possession of the certificates of deposit, which by their own terms had to be returned to the bank as a condition to their payment at maturity. Furthermore, the bank would not have redeemed the certificates during Mr. Porterfield's lifetime without his consent. Thus it appears beyond any question that the requisite unconditional relinquishment of control did not take place.

Moreover, the clear and convincing rule means that the gift must be established so definitely as to put the matter beyond any reasonable doubt. Here we think it decidedly unlikely that Mr. Porterfield intended to make an irrevocable gift of $12,500 (to mention only the first certificate) in 1968. Porterfield was not well-to-do. Apart

from the $12,500 he had a small bank account, a few acres of land, and modest income under the federal Social Security laws. He was 87 years old. The sons were in their sixties, not dependent upon their father. The banker, Franklin, mentioned the fact that Mr. Porterfield, by putting his money into certificates of deposit, was able to obtain a greater rate of interest than the bank had been paying upon his regular account. When the record is considered as a whole it cannot fairly be said that all the essential elements of gifts inter vivos have been established by clear and convincing proof.

Affirmed.