Iris CORISTO & Don CORISTO *v.* THE
TWIN CITY BANK, Melvin L. HUFFMAN,
Individually and as Executor of the Estate
of Gladys CLEMENTS, deceased

74-183                                          520 S.W. 2d 218

Opinion delivered February 3, 1975
[Supplemental opinion on Denial of Rehearing
April 14, 1975, p. 563-A.]

*Ray & Donovan,* for appellants.

*Wallace, Hilburn & Wilson, Ltd.* and *E. L. Schieffler* and *Harvey L. Yates,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal involves the question whether a certain bank savings passbook account designated as a joint account with right of survivorship could be withdrawn by one of the depositors. The chancery court held that it could, under the circumstances prevailing in this case. We agree.

The account had its inception in the deposit of $10,000 of the proceeds of a policy of life insurance of which Gladys Clements was the beneficiary. Mrs. Clements endorsed the insurance company check for $12,000 and turned it over to her daughter Iris Coristo, who took it to The Twin City Bank on November 7, 1969, and made the deposit, after having deposited $2,000 of the proceeds in her own checking account to apply toward the cost of adding a bedroom to the Coristo dwelling house to provide living quarters for Mrs. Clements. Mrs. Coristo took the signature card for the account to her home after having made the deposit. There Mrs. Clements and Mrs. Coristo's husband, Don, signed the card and it was returned to the bank. On the face of the card there were stamped these words:

> Receipt is hereby acknowledged of Pass Book 49 Rules and Regulations, the terms of which are agreed to.

The account designation read, "Gladys Clements or Don Coristo or Iris Coristo". Upon this designation, of course, it was clear that any of the parties might have made withdrawals from the account unless a written notice restricting that right was given or unless the passbook terms prevented this being done.

Mrs. Clements did go to the bank on August 30, 1971,

and withdraw the entire account and place it in an account designated as "Mrs. Gladys Clements (only)". On February 24, 1972, she executed a signature card endorsed "Change my (savings) account to a joint account with right of survivorship styled 'Gladys Clements or Melvin L. Huffman'. On that card the account designation was "Gladys Clements or Melvin L. Huffman". The bank changed the account as designated and assigned the same number to it as that previously assigned to the joint account with the Coristos. The money was on deposit in this account when Mrs. Clements died.

Appellants assert four points for reversal. They are:

I

The trial court erred in refusing to enforce the contract between the joint depositors and the bank which required presentation of the passbook before the joint account could be withdrawn by either depositor.

II

The trial court erred by holding that the money in dispute was not a gift to Iris Coristo from Gladys Clements prior to November 7, 1969.

III

The trial court erred in failing to hold that the defendants were estopped by their contract to deny that the funds in dispute could not be withdrawn unless the passbook is presented.

IV

The trial court erred in not reforming the passbook by inserting the names of Don Coristo or Iris Coristo.

We shall treat them in order.

I

Appellants argue that Mrs. Clements had no right to

withdraw the money in the first account without presenting the passbook. The evidence disclosed that this passbook was never out of the possession of Iris Coristo. The only evidence that it was ever seen by Mrs. Clements was the testimony of Mrs. Coristo that she showed it to her mother before putting it in the daughter's cedar chest. On the first page of the passbook, the name of the depositor was shown as "Gladys Clements". Directly following the name and address of the bank these words appear: "This book must be presented when money is deposited or withdrawn. This account is not subject to check." Appellants contend that these words are a part of the "Rules and Regulations" to which Mrs. Clements agreed and that they constitute a contract among the bank and the individual joint holders of the account designated on the signature card. They rely heavily upon *The Keokuk Savings Bank & Trust Co.* v. *Desvaux,* 259 Iowa 387, 143 N.W. 2d 296 (1966); *Welch* v. *North Hills Bank,* 442 S.W. 2d 98, (Mo. App. 1969); and *Badders* v. *Peoples Trust Co.,* 236 Ind. 357, 140 N.E. 2d 235, 62 ALR 2d 1103 (1957). Assuming, without deciding that, as held in *Badders,* the passbook does constitute a contract between the depositors as well as between the depositors and the bank, we do not agree that this contract prevented the withdrawal made by Mrs. Clements.

The parties clearly agreed that they would be bound by the terms of the passbook rules and regulations. We do not consider the requirement that the passbook be presented to be a part of those rules and regulatons. In the back of the passbook, rules are printed under the title "Terms and Conditions Applicable to TCB Passbook 49 Savings Account". These are numbered from one to ten. There is nothing whatever in these terms and conditions to prevent withdrawals without presentation of the passbook. The first is entitled "Establish Accounts". The next three relate to deposits. Only items five and seven have any bearing on this issue at all. Because we consider them as governing the question we reproduce them in full, viz:

## 5. WITHDRAWAL OF DEPOSITS

Funds on deposit during the entire 90 day period will be eligible for withdrawal without notice during the first

ten days following the 90 day period and each subsequent 90 day period. Funds on deposit may also be withdrawn at other times upon not less than 90 days written notice to the bank signed by the depositor, designating the date on which withdrawal is to be made, in which case interest will be paid to the date of withdrawal stated in the notice. No interest will accrue on the funds to be withdrawn under a "notice to withdraw" after the designated withdrawal date. Funds on deposit subject to a notice of withdrawl will not be eligible for withdrawal during the 10 days following the 90 day interest period. All withdrawals will be made only upon presentation by the depositor of appropriate account information and proper identification.

## 7. JOINT DEPOSITS

When two or more persons are named as depositors in form indicating that it is payable to any one of them, or the survivor or survivors of them, notice of redemption may be given to, payment of principal and interest may be made to, and notice of withdrawal may be signed by any one of the parties during the lifetime of all, or any survivor or survivors, after the death of one or more of them.

It will be readily seen that there is no requirement in these "terms" that the passbook must be presented when a withdrawal was made by any of those otherwise authorized to make it. Furthermore, there is no reference to the statement on the first page of the passbook relating to its presentation. It is clear to us that these "terms and conditions," and not the statement on the first page of the passbook, constitute the "terms" to which Mrs. Clements agreed and are the rules and regulations constituting the contract between the depositor and the bank. In this respect, this case differs from *Keokuk Savings Bank & Trust Co* v. *Desvaux*, 259 Iowa 387, 143 N.W. 2d 296 (1966), where the requirement of presentation of the passbook was clearly a part of the rules of the bank assented to by the parties. If there was any doubt about the governing rule, it seems to have been dispelled by Bernice Orisini, operations officer at the bank. She testified that Item

7 quoted above was a part of the "passbook" rules and regulations and that, while normal procedures of the bank were to ask for the passbook when a withdrawal was made, that the presentation of the book was not a binding requirement and a withdrawal without it was possible. Although she testified that everything in the passbook was a part of the rules and regulations of the bank, when asked by the court to state the purpose of the passbook requirement, Ms. Orsini explained that treatment of passbooks had undergone a change in banking, because before bank statements were rendered to depositors, the passbook was the only record of the account. She stated a withdrawal without the passbook was possible and one of the specific circumstances under which an account could be withdrawn without the passbook was a "change of beneficiary".

Appellants also rely heavily upon *Welch v. North Hills Bank*, 442 S.W. 2d 98 (Mo. App., 1969); *Badders v. Peoples Trust Co.*, 236 Ind. 357, 140 N.E. 2d 235, 62 ALR 2d 1103 (1957), and *Davis v. Chittenden County Trust Co.*, 115 Vt. 349, 61 A. 2d 553 (1948)[1]. But in those cases neither the existence of a rule requiring presentation of the passbook for withdrawals nor its incorporation into the contract between the bank and the depositor was subject to question, as it is here. We deem the terms and conditions hereinabove quoted to be the only contractual terms relating to withdrawal.

It has been held that a requirement that the passbook be presented at the time of withdrawal is for identification of the depositor and for the convenience and protection of the bank and, as such, may be waived by the bank. *Mathey v. Central National Bank*, 179 Kan. 291, 293 P. 2d 1012 (1956); In Re Blose's Estate, 374 Pa. 100, 97 A. 2d 358 (1953); 9 CJS 1424, Banks and Banking, § 1002. We have no quarrel with the authorities holding that such a requirement may be incorporated into the agreement between the bank and the holder of a joint account so that it may not be waived without the concurrence of all of them. We simply do not agree that this requirement became a part of the contract here. The location of the passbook requirement and its separation from the

[1] Cf. *Speasl v. National Bank of Decatur*, 37 Ill. App. 2d 384, 186 N.E. 2d 84 (1962).

"terms and conditions" which do not mention it, when considered along with the testimony of Ms. Orsini, is clearly indicative that it was inserted and intended to be for the bank's benefit only, and subject to waiver by it. To say the least, we cannot say that the chancellor's finding in this regard is clearly against the preponderance of the evidence.

## II

Appellants also argue that the money deposited was a completed gift by Mrs. Clements to Iris and Don Coristo. The chancellor held that the money on deposit in the joint account to which all were parties was not such a gift. Appellants base their argument upon evidence showing that upon receipt of the check for $12,000 Mrs. Clements endorsed the check in blank and delivered it to her daughter Iris, who deposited $2,000 from it in an account in her own name and the remaining $10,000 in the joint account, retaining the possession of the passbook at all times thereafter. They also rely upon the testimony of the daughter that her mother gave her the money, told her to do with it as she pleased, tried to get her to put it in a trust for the Coristo boys and encouraged her to buy anything she wanted because she had the money.

All elements of a completed gift inter vivos must be shown by clear and convincing evidence. *Porterfield* v. *Porterfield*, 253 Ark. 1073, 491 S.W. 2d 48. In *Porterfield* we reiterated the oft-expressed view that, in order to constitute such a completed gift, there must be an actual delivery of the subject matter of the gift to the donee with a clear intent to make an immediate, present and final gift beyond recall, accompanied with an unconditional release of all future dominion and control by the donor over the property delivered. We also said that the "clear and convincing" rule meant that the gift must be established so definitely as to put the matter beyond any reasonable doubt.

Of course, the opening of this account did vest an interest in appellants under Ark. Stat. Ann. § 67-552 (Repl. 1966), whether Iris Coristo or Mrs. Clements be considered as the "person opening such account," because the signature

card itself constituted a designation "in writing to the banking institution that the account . . . . be held in joint tenancy with right of survivorship". The account became the property of the three as joint tenants with right of survivorship. See *Cook* v. *Bevill*, 246 Ark. 805, 440 S.W. 2d 570; *Willey* v. *Murphy*, 247 Ark. 839, 448 S.W. 2d 341. But we are not able to say that the chancellor was in error in holding that neither the entire $12,-000 check nor the $10,000 deposit was a gift by Mrs. Clements to appellants, or either of them. Mrs. Clements moved into the Coristo home about a week after her husband's death, under an arrangement whereby the Coristos built an addition to their dwelling house, for which Mrs. Clements was to, and did, pay, in order to have room for her. When the insurance company check was delivered to Iris Coristo, she told her mother she intended to put $2,000 of the money in her own account for the building of the addition. Iris Coristo testified on direct examination that her mother gave no instructions and there was no other discussion at the time of the delivery of the check. It was on cross-examination that she said that her mother gave her the money. Mrs. Coristo admitted that her mother was upset over her husband's death at the time. The evidence does not disclose that Mrs. Clements ever went to the bank while she lived with appellants, except on August 30, 1971, and the only testimony that Mrs. Clements ever saw the passbook was that of Mrs. Coristo. Mrs. Clements did sign the signature card, but there was no discussion of the designation of the account at that time. The bank had designated the account as joint upon the instructions of Iris Coristo and Iris Coristo testified that there was no discussion with the bank personnel about her right to deposit the $2,000 in her own account. The passbook showed the savings account to be in the name of "Gladys Clements" only. Iris Coristo doubted that she noticed this until it was called to her attention by an officer of the bank when she presented the passbook in February 1972 to obtain a loan, even though she jealously guarded her possession of it, taking it out of her cedar chest only when she presented it to the bank for posting of accrued interest on one or two occasions. The application for the loan and the loan were made after Mrs. Clements had withdrawn the money from the joint account. Iris Coristo testified that she wanted the money to care for her mother. It is quite significant that

the interest on this account was not reported on the income tax returns of appellants. The excuse for doing this, given by Iris Coristo, was that their tax accountant advised them not to do so because her mother's income, which otherwise consisted only of rent and social security payments, should be permitted to "absorb it". The signature card, and bank rules, as well as § 67-552 clearly recognized that any one of the three joint tenants could withdraw any or all of the money from the account, and there was never any contrary written designation given to the bank.

We cannot say that there was no reasonable doubt about the making of a completed gift by Mrs. Clements or that there was a clear intent on the part of Mrs. Clements to put the money beyond her own recall or to release the money from all future dominion and control by her. Thus, we cannot say that the chancellor erred in this finding.

### III

Appellants also argue that both the bank and Mrs. Clements' executor are estopped by their contract to deny that the funds in dispute could not be withdrawn unless the passbook was presented. As hereinbefore pointed out, Mrs. Coristo's testimony is the only evidence that Mrs. Clements ever saw the passbook which Mrs. Coristo said was carefully secreted by her after she took it home. If Mrs. Clements did see the passbook requirement she must also have noted that her name alone was shown above it as the depositor. Since estoppel bars truth to the contrary, the party asserting it must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference and nothing can be supplied by intendment. *Wheeless v. Eudora Bank*, 256 Ark. 644, 509 S.W. 2d 532 (1974). We cannot say that there was a clear preponderance of evidence to establish estoppel. Appellants, in making their argument on estoppel, make much of the fact that after having first deposited this money in a savings account in her own name, Mrs. Clements, on February 24, 1972, deposited it in a joint account with her son, Melvin L. Huffman, and that appellee bank assigned to it the same account number previously assigned to the joint account with appellants. Appellants say

that this amounted to a redeposit in the original account. We cannot attach such significance to this circumstance.

## IV

In view of what we have said, we find no basis for the reformation of the passbook sought by appellants.

The decree is affirmed.

Supplemental Opinion on Denial of Rehearing
delivered April 14, 1975
522 S. W. 2d 417

JOHN A. FOGLEMAN, Justice. By petition for rehearing, appellants assert that we failed to consider their argument that the Twin City Bank is estopped by the passbook statement. Although we made particular application of the rules relating to estoppel to facts particularly pertinent to the estate of Gladys Clement, we unintentionally failed to extend our treatment to the position of the bank. The evidence in support of an estoppel is perhaps stronger in the case of the bank than it was as to Mrs. Clement. The bank obviously did know that the notation as to presentation was on the first page of the passbook. But, as we have pointed out, the bank viewed it as a measure for its own protection and not for the benefit of the depositor, and never represented to Mrs. Coristo that it was for her protection or that it afforded her any protection.

The chancellor did not find that there was a basis for es-

toppel, and, in view of the burden of proof in such cases, we cannot say that he was in error. Mrs. Coristo drew her own inference to arrive at her conclusion. Since an estoppel bars the truth to the contrary, the party asserting it must prove it strictly. We cannot say that estoppel as to the bank has been shown strictly or to the degree of certainty required. Usually, estoppel can only be predicated upon a statement made with the intention to mislead the party asserting it or that it be acted upon by the party to whom it was made. *Union Indemnity Co.* v. *Benton County Lumber Co.*, 179 Ark. 752, 18 S.W. 2d 327. It must be clearly established that there was such intention or that there was negligence so gross as to be culpable. *Hope Lumber Co.* v. *Foster & Logan Hardware Co.*, 53 Ark. 196, 13 S.W. 731. Gross negligence falls just short of that reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong, and the distinction is said to be so slight as to seem somewhat artificial. *Edwards* v. *Jeffers*, 204 Ark. 400, 162 S.W. 2d 472; *Splawn, Adm'x.* v. *Wright*, 198 Ark. 197, 128 S.W. 2d 248.

We do not think that an estoppel barring the truth as to the bank was shown by a preponderance of the evidence.

BYRD, J., concurs in denial of the rehearing but dissents from this opinion.