Christena HASEMAN *v.* UNION BANK
OF MENA & Liston HASEMAN, Jr.

77-150                                           562 S.W. 2d 45

Opinion delivered February 13, 1978
(Division I)
[Rehearing denied March 20, 1978.]

*James Howard Smith,* for appellant.

*Nabors Shaw;* and *Hardegree & Maddox,* by: *David Maddox,* for appellees.

DARRELL HICKMAN, Justice. Christena Haseman sued the Union Bank of Mena in the Polk County Circuit Court for breach of contract and negligence for permitting her adopted son to withdraw about $12,000 from a joint savings account. Mrs. Haseman's lawsuit was primarily based on the premise that she had exclusive possession of the savings passbook and withdrawals could only be made by presentation of the passbook. The bank permitted the son, a co-tenant of the account, to withdraw the money without the passbook. Before trial the son was joined as a defendant in the suit. The allegations against him were the same as those against the bank.

The trial judge granted the son's motion for a directed verdict. The case against the bank went to the jury and a verdict was returned in favor of the bank.

Mrs. Haseman appeals alleging four errors: the trial court should have ruled as a matter of law the defendants breached the savings account contract by permitting the withdrawal of money without the use of the passbook; the trial court was wrong in directing a verdict for the son because he did not present the passbook and extrinsic evidence proved the money was actually Mrs. Haseman's; the instructions given by the court were slanted and amounted to a comment on the evidence; and, the court erroneously prohibited Mrs. Haseman's attorney from arguing to the jury the import of an Arkansas statute.

We find the trial court committed error in granting a directed verdict for the son; in the giving of one instruction; and, in commenting about the instructions.

In 1966, Mrs. Haseman and her husband deeded to their adopted son, Liston Haseman, Jr., a 240-acre farm in Polk County, Arkansas, reserving for themselves a life estate. In May of 1973, the Hasemans opened a savings account with the Union Bank of Mena. A passbook was issued to the Hasemans which contained printed rules and regulations. Rule 3 provided, among other things:

> . . . the passbook must be presented in order that the payment may be entered therein . . .

However, Rule 5 stated that any change of the rules and regulations could be made by posting a notice in the lobby of the bank for five consecutive business days.

The son was added to the account as a joint owner with the right of survivorship in July, 1973. Before Mr. Haseman died in October of 1973, a timber deed on the farm was signed by Mr. and Mrs. Haseman and their son.

Two deposits were made to the account from the sale of the timber; one in November of 1973, for $5,500; and, one in January of 1974, for $5,500. Mrs. Haseman tried to testify that the money was hers. The court ruled such testimony improper. She was, however, permitted to testify that she paid income tax on the interest earned on the account for 1973 and 1974. On two occasions in 1974, Mrs. Haseman went to the Mena Bank and tried to change the account. In July of 1974, she tried to change the account to her name only with her four children named as beneficiaries on her death. She said she was advised by employees of the bank that such a change could not be made. In August of 1974, she consulted a bank officer about changing the account or withdrawing the money and the account remained the same. She testified that on both occasions employees and officers of the bank assured her that withdrawals could not be made by anyone without the use of the passbook.

The employees and the bank officers denied making any such statements. The bank introduced into evidence a copy of a notice that stated the use of passbooks would be discontinued as of April 1, 1974. Testimony was offered that the notice was properly posted according to the passbook rules and regulations. A bank official testified that as early as 1969 or 1970 the required use of passbooks was discontinued and issued thereafter only as a convenience at the request of depositors. The son withdrew most of the money from the savings account on August 13, 1974, without the use of the passbook.

First, the court correctly refused to rule that as a matter of law both defendants had breached the savings account contract by permitting a withdrawal without the use of the passbook. The rules, as printed in the passbook, seemed to

require the book for a withdrawal. However, it was disputed whether the passbook was required to be used at the time of the withdrawal. Evidence was offered to the jury that the rule requiring passbooks had been changed. Also, the bank offered testimony disputing Mrs. Haseman's statement that she was told twice the passbook would be required.

We considered a similar problem in a recent decision. *Coristo* v. *Twin City Bank,* 257 Ark. 554, 520 S.W. 2d 218 (1975). However, in *Coristo* there was no requirement in the "rules and regulations" that the passbook must be presented for withdrawal. There was a statement in the passbook to such an effect but it was not a "rule." We held in *Coristo* that the passbook did not have to be presented for withdrawals; but the *Coristo* decision turns on the peculiar facts of that case. The facts here were disputed, therefore, the trial court properly submitted Mrs. Haseman's case against the bank to the jury on a fact question.

Second, the trial judge erred in directing a verdict for the son. The court so ruled because it determined that as a matter of law the proceeds of the timber sale belonged to the son since Mr. and Mrs. Haseman had only a life estate in the land and, therefore, did not have a legal right to sell the timber. See *McLeod* v. *Dial,* 63 Ark. 10, 37 S.W. 306 (1896). However, Mrs. Haseman argued that she, her husband and her son, had agreed that the money belonged to the parents until their death. As noted previously, she paid income taxes on the interest of the timber sale proceeds for two years. Also, Mr. and Mrs. Haseman had deposited over $1,000.00 to the account before the timber proceeds were added.

The trial judge should have allowed the question of ownership of the money to go to the jury as a fact question. We have indicated that regardless of the ownership listed on the signature card of a financial institution, the parties may agree otherwise among themselves. See *Coristo, supra.*

Finally, we agree with the appellant's last two assignments of error. The court erred in giving an instruction requested by the bank which read:

You are told that ordinarily a passbook is for the con-

venience of the customer in order that the statement of the account may be posted at the time of any withdrawals or deposits, and as such the presentation of the pass book at the time of any withdrawal or deposit is subject to being waived by the bank.

The basis for this instruction was our decision in *Coristo*. This is not an accurate statement of the law from *Coristo*. The ordinary use of a passbook is irrelevant. The question in *Coristo*, as here, was whether a contract existed which required the use of a passbook for withdrawal of funds. That depends on the facts of the case. This instruction is misleading.

It was critical to Mrs. Haseman's case that the jury be properly instructed that she and the bank *could have* an agreement requiring the use of a passbook. Such a contract is permitted by Arkansas law. Ark. Stat. Ann. § 67-519 (Repl. 1966). Arkansas law also provides that when two or more persons become joint owners of an account either person may withdraw funds and such a withdrawal exonerates the bank from any liability to the other joint tenant. Ark. Stat. Ann. § 67-521 (Repl. 1966).

The trial judge correctly read both of these statutes verbatim as instructions. However, when the attorney for Mrs. Haseman tried to read Ark. Stat. Ann. § 67-519 (Repl. 1966), and comment about it to the jury, he was stopped by the trial judge. After a brief consultation the court indicated that no instruction was given on this latter statute commenting:

No, sir, I didn't give it.

Obviously, the court was in error. Counsel for Mrs. Haseman then indicated to the jury that he could not discuss this statute. The court stated:

Members of the Jury, in that connection, I am not defending myself, but I did give you a more recent statute that was adopted that does apply to this case.

This could only be a reference to Ark. Stat. Ann. § 67-521 (Repl. 1966) which would tell the jury that the bank would

not be liable if a joint tenant withdrew money without a passbook.

This was error because the first question to the jury was: whether a contract existed which required the use of the passbook? If so, did the bank breach its contract by permitting the son to withdraw the funds without the passbook. Such a contract is not inconsistent with Ark. Stat. Ann. § 67-521 (Repl. 1966). The statutes mentioned herein are not inconsistent and are easily reconciled. By commenting as he did, the trial judge made a comment on the evidence which was error. Ark. Const., Art. 7 § 23.

Therefore, we affirm the trial court's refusal to find as a matter of law that the passbook contract was clear, unambiguous and required presentation of the passbook for the withdrawal of funds. We reverse the directed verdict for Liston Haseman, Jr. since there is a question as to ownership of the funds. We reverse the verdict for the bank because the court improperly commented on these instructions.

Reversed and remanded.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOWARD, JJ.