The Honorable Julia Hughes Jones State Auditor 230 State Capitol Little Rock, Arkansas 72201
Dear Ms. Jones:
This is in response to your request for an opinion on four questions concerning the Auditor's responsibilities under "The Uniform Disposition of Unclaimed Property Act" ("UDUPA"), codified at A.C.A. § 18-28-201 et seq. Your four questions will be set out below and answered in the order posed.
Your first question is as follows:
 Financial institutions became subject to the unclaimed property laws on July 1, 1979 (Act 265 of 1979). Should banks which completely wrote off dormant accounts prior to this date be allowed to retain these monies or should they be required to reinstate these accounts, turning them over to the state after seven years of dormancy? In other words, does Act 265 apply retroactively to those accounts?
For the reasons that follow, it is my opinion that the UDUPA applies only to bank funds on which the statute of limitations had not run against the depositor prior to the effective date of the UDUPA. In other words, any deposits or amounts as to which the depositor would have been barred from suing to recover prior to the effective date of the UDUPA, are not subject to the act; and banks are not required to turn these sums over to the Auditor.
This conclusion has been reached by the courts of many other states construing the Uniform Act. The seminal case on point appears to be Douglas Aircraft Co. v. Cranston, 58 Cal.2d 462,374 P.2d 819, 24 Cal. Rptr. 851 (1962). The court in Douglas
expressly held that California's uniform act did not apply to claims barred by the statute of limitations prior to the effective date of the act. This conclusion has been upheld in many other cases. See Cole v. National Life InsuranceCompany, 549 So.2d 1301 (Miss. 1989); Citronelle-MobileGathering, Inc. v. Boswell, 341 So.2d 933 (Ala. 1977); Boswellv. South Central Bell Tel. Co., 293 Ala. 189, 301 So.2d 65
(1974); and Country Mutual Insurance Company v. Knight,40 Ill.2d 423, 240 N.E.2d 612 (1968). See also, Tennessee Attorney General Opinion No. 83-499. See contra, RiggsNational Bank of Washington v. District of Columbia,581 A.2d 1229 (D.C. 1990.), (construing a separate express provision regarding retroactivity.)
All of these cases construe a provision of the UDUPA which provides that:
 The expiration of any period of time specified by statute or court order during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this subchapter or to pay or deliver abandoned property to the Auditor of State.
A.C.A. § 18-28-216.
The courts cited above have held that this provision does not have retroactive effect. That is, the monies forming claims already barred before the effective date of the UDUPA do not have to be turned over to the Auditor pursuant to the act's provisions. Some courts (i.e. the courts in Cole and CountryMutual) have reached this conclusion based upon statutory construction aids. These include the presumptions that: 1) statutes affecting substantive matters apply prospectively only, unless a contrary intent is clearly expressed, (Huffman v.Dawkins, 273 Ark. 520, 622 S.W.2d 159 (1981)), and 2) statutes will be construed if possible, as constitutional. Love v. Hill,297 Ark. 96, 759 S.W.2d 550 (1988). The courts noted in Cole
and Country Mutual that there was no clearly expressed intention that the act be retroactive and that if it were applied retroactively, constitutional problems would arise, primarily because the bar of the statute of limitations in their states amounted to a "vested right." The same result obtains in Arkansas. See generally, Morton v. Tullgren, 263 Ark. 69,563 S.W.2d 422 (1978). Additionally, other courts have placed emphasis on the fact that the UDUPA is to be construed to make uniform the laws of the states which enact it. See A.C.A. §18-28-229. Because the courts of other states have construed their uniform acts as prospective only, this is an additional reason for an Arkansas court to so construe it.
Your second question is as follows:
 An area which needs clarification is that of bank service charge changes on dormant accounts. Is posting of a notice of change in regulations (i.e. account service charges) in the lobby adequate notice to dormant account holders? Can such posting serve as legally sufficient constructive notice that will bind the state?
This issue will be determined by the contractual arrangement between the depositor and the bank. In Haseman v. Union Bank ofMena, 262 Ark. 803, 562 S.W.2d 45 (1978), appeal afterremand, 268 Ark. 318, 597 S.W.2d 67 (1980), the agreement governing use of passbooks stated that any change in the controlling rules and regulations could be made by posting a notice in the bank lobby for five consecutive days. The court upheld a change in the terms regarding saving accounts, concluding that the notice provided was in accordance with the rules, as established by agreement. The court rejected an argument that actual notice was required, stating:
 We do not agree that the notice was deficient in this case. The question of notice was a matter agreed upon when the passbook was issued. The general rule is that a depositor by accepting a passbook is bound by the rules it contains.
268 Ark. at 320.
The court also refused to conclude that the notice provided failed to satisfy due process of law. Id. at 321. The court stated: "Due process does not always require actual notice."Id.
We assume that your question as to whether such constructive notice will "bind the state," inquires as to whether banks can withhold these service charge amounts from the sums turned over to the Auditor under the UDUPA. This question involves whether these charges are "lawfully . . . withheld" as contemplated by A.C.A. § 18-28-202(a). In my opinion, the posting of a notice in a bank lobby will "bind the state" if such form of notice is acceptable under the agreement between the depositor and the bank, as the Auditor's custodial rights in the funds are usually held to be derived from the depositor. See Cole v. NationalLife, supra.
Your third question is as follows:
 If it is the bank's practice to refund dormant account service charges to a customer upon a request, is the bank bound to refund these charges on demand by the Auditor of State on behalf of the missing unclaimed account owners?
This question is governed by A.C.A. § 18-28-202(a), mentioned above, which provides that:
 The following property held or owing by a banking or financial organization or by a business association is presumed abandoned:
 (a) Any demand, savings, or matured time deposit made in this state with a banking organization, together with any interest or dividend thereon, excluding any charges that may lawfully be withheld, unless the owner has within seven (7) years:
[indicated an interest in the deposit.]
[Emphasis added.]
The amounts are "lawfully . . . withheld" as concluded above, if they are in accordance with the agreement between the depositor and the bank. Your third question asks whether banks which, as a practice, refund these charges to customers, even though they may be lawfully withheld, also must refund them to the Auditor when the accounts become subject to the UDUPA.
The issue has been generally addressed by the courts of several states. Some hold that if a "holder" under the UDUPA "waives" the right to collect sums against the owner, then it has also "waived" this right against the state. See Bank of America v.Cranston, 252 Cal. App.2d 208, 60 Cal. Rptr. 336 (1967); Coryv. Golden State Bank, 95 Cal. App.3d 360, 157 Cal. Rptr. 538 (1979); Travelers Express Co. Inc. v. Cory, U.S. District Ct. No. 77-1086R (C.D. Cal. 1979), aff'd on other grounds,664 F.2d 763 (9th Cir. 1980). Other courts have held, however, that a waiver of the right to collect these sums as to one party is not a waiver as to other parties, including the state. State v. ElPaso Electric Co., 402 S.W.2d 807 (Texas Civil App. 1966);Central Power Light Co. v. Texas, 410 S.W.2d 19
(Tex.Civ.App. 1966). In the latter case, it was said that "[a]ppellant's waiver of the bar of limitations in some instances was permissible at its election and would not affect other claims subject to the defense of limitations." 410 S.W.2d at 26.
The statute allows the bank to deduct any charges that may "lawfully be withheld." In my opinion, this statute gives the bank the right to withhold lawful charges, in spite of the fact that it may, as a courtesy and public relations matter, refund these amounts to its customers. These amounts "may lawfully be withheld," even though as to its customers, a bank may choose not to withhold them. Some states, in their uniform acts, have adopted definitions of the term "lawfully withheld" or "lawful charge" which require the bank to give the state the same benefit as would be given, in ordinary practice, to the bank's customers.See e.g., South Carolina Statutes Ann. § 27-18-20 (12).[1] Arkansas has not adopted such a definition.
Additionally, although the Auditor's rights as custodian under the act are derived from the depositor, the bank's practice of refunding service charges to customers is not a "right" of the customer, but is a practice provided at the discretion of the bank, presumably in an effort to retain the customer's business.
Your fourth question is as follows:
 One of the state's electrical cooperatives contends that it is not subject to the state's unclaimed property laws, despite the existence of 18-28-204 and 18-28-205. This same cooperative annually writes off unclaimed membership fees, despite these sections and despite their own registered bylaws which indicate otherwise. Are these cooperatives subject to the state's unclaimed property laws? Should these unclaimed `membership' fees be turned over to the Auditor of State as custodian, i.e. are they `unclaimed property' for purposes of Act 265?
The resolution of this question will require the determination of factual issues which this office is neither empowered nor equipped to undertake. The UDUPA applies to any "utility," which is defined as:
 any person who owns or operates within this state for public use, any plant, equipment, property, franchise, or license for the transmission of communications or the production, storage, transmission, sale delivery, or furnishing of electricity, water, steam, or gas.
You have not stated on what argument the cooperative relies to exclude itself from the act's provisions. It may be that the cooperative argues that it does not operate "for public use," as stated in A.C.A. § 18-28-204 above, as its customers are "members" of the cooperative. A.C.A. § 23-18-318. It may be that the cooperative argues that under § 18-28-204, "membership fees" are not funds which are "presumed abandoned" and thus required to be turned over to the Auditor, as that statute applies to "deposits" and "sums paid in advance" for utility services. The resolution of these arguments will require extensive factual development as to the exact nature of the electric cooperative in question. As noted, this office cannot undertake such a factual inquiry.
We will note, however, that at least one court has summarily concluded that an electric cooperative was subject to that state's Uniform Disposition of Unclaimed Property Act. SeeSouth Carolina Tax Commission v. York Electric Cooperative,275 S.C. 326, 270 S.E.2d 626 (1980). Other states, however, have specific statutory provisions which exempt electric cooperatives from the provisions of the unclaimed property laws. See,
Indiana Stat. § 32-9-1-2.5, Alabama Code § 35-12-24.1, and New Mexico Stat. 7-8-10.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] The South Carolina statute defines "lawful charge" as "a charge for which there is a valid and enforceable written contract between the issuer and the owner of the instrument pursuant to which the issuer may impose the charge and the issuer regularly imposes the charge and does not regularly reverse or otherwise cancel the charge."