CALVIN LYNN KNIGHTON, ET AL v.
INTERNATIONAL PAPER CO., ET AL

5-4842 438 S.W. 2d 721

Opinion Delivered April 1, 1969

524

*Bernard Whetstone* and *Chambers & Chambers* for appellant.

*Graham, Laney, Barnes & Roberts* for appellee (Int. Paper Co.).

*Smith, Williams, Friday & Bowen* by *William H. Sutton* for appellee (Ward).

Conley Byrd, Justice. This appeal by Calvin Lynn Knighton and Calvin S. Knighton and Lloyd R. Nix individually and as father of Jan Nix, a minor, questions the ruling of the trial court upon the summary judgment dismissing appellees R. E. Ward and International Paper Co. as parties defendant from the lawsuit. The injuries herein complained of were sustained about 7:30 P.M. Friday, January 28, 1966, on Highway 82 just west of Stamps, Arkansas. The allegations are that a pulpwood producer, Claud King, negligently parked his unlighted vehicle on the paved portion of the highway in such manner that it was struck from the rear by the Knighton automobile in which Jan Nix was a passenger. Appellees R. E. Ward and International Paper Co. were made parties defendant along with Claud King on the theory that King was an agent and servant of R. E. Ward and International Paper Company. King is not not a party to the appeal, the cause not having been dismissed as to him.

Appellants list three points for reversal. These points have to do with the burden of proof when the defense of independent contractor is pled, the existence of

non-ownership liability or workmen's compensation insurance policies on the status of an alleged independent contractor, and error of the court in granting summary judgment. Since we find that the trial court was correct in rendering summary judgment upon the basis that Claud King, even if he were an employee, was not within the scope of his employment, we do not reach the other arguments listed by appellant.

The record shows that appellee International Paper Co. is engaged in the manufacture of wood products which necessitates its procuring vast amounts of pulpwood. To accomplish this, International has numerous stations in a network of towns staffed by its own salaried employees who receive pulpwood hauled to them by persons such as Claud King. To procure the pulpwood in the species and quantity desired, International issues a purchase order to persons such as R. E. Ward, whom International describes as wood dealers (described by Ward as "wood shipper" and described by appellants as "procurement officer"). The persons in appellee Ward's position in turn notify the wood producers, such as Claud King, of the species and quantity desired. The producers in turn either cut the pulpwood from timber purchased by the wood shipper or, as in this instance, make their own arrangements with a landowner to cut pulpwood.

Claud King testified in the case at bar that he had made arrangements with Doyce Byrd to cut pulpwood on Byrd's land. On the day before, his truck had reached International's wood yard too late to be unloaded. He had parked the truck and left it over night. On the day of the accident King drove his personal automobile from his home to International's yard, unloaded his truck and returned to the woods where he cut and hauled to International's pulpwood yard a load of pulpwood. His truck was unloaded at 2:30 P.M. At that time International issued him a slip of paper showing the amount and species of wood hauled, which he took

to Ward's office, at a location away from the yard, to receive his pay. At King's direction Ward made one check to him and another check to Doyce Byrd for the amount that King had agreed to pay Byrd. King's testimony as to his intention thereafter is set out in appellants' abstract as follows:

"On the afternoon of the collision I wasn't planning to do anything after I left Stamps and before my vehicle broke down. I didn't plan to go back to Byrd's. I usually give him his check at the end of the week.. On that particular day I wasn't going to take the check to him because I was trying to get home out of the snow and rain. If I had seen him I would have given him the check. I did not plan making a special trip to carry it to him that day. I had no arrangement about when I was going to deliver it to him."

The time from 2:30 until 7:30 is accounted for by trouble King was having with his truck. The truck was pulled into a shop by wrecker sometime around 6:00. After some work on the truck, King started home but again parked the truck because of mechanical difficulties. It was after this that the accident occurred.

In addition to King's testimony that the truck belonged to him, appellants, in answer to a request for admissions, admitted that King was paid on a unit basis for the pulpwood cut and hauled by him and admitted that King started home at 2:30 on the date of the accident and that his truck stalled a few miles west of Stamps.

It is the general rule that an employee traveling from his place of work to his home or other personal destination after completing his day's work cannot ordinarily be regarded as acting in the scope of his employment so as to charge the employer for the employee's

negligence in the operation of his own vehicle. We recognized this rule in *Frank Lyon Company* v. *Oats*, 225 Ark. 682, 284 S.W. 2d 637 (1955), and noted four of the exceptions to the rule. To avoid the application of this rule appellants rely upon *Phillips Cooperative Gin Co.* v. *Toll*, 228 Ark. 891, 311 S.W. 2d 171 (1958), and contend that King's testimony that he was not on his way to take the check to Byrd cannot be regarded as undisputed or uncontradicted since King is a party to the law suit.

It is true that in many of our cases can be found statements to the effect that the testimony of a party never stands uncontradicted. A review of our cases however, shows that we have not literally applied the statement but that in fact we have followed what is known as the more flexible view—*i.e.*, where the uncontradicted testimony of an interested witness is unaffected by any conflicting inferences to be drawn from it and is not improbable, extraordinary, or surprising in its nature, or there is no other ground for hesitating to accept it as a truth, there is no reason for denying the finding of verity dictated by such evidence. See *Kansas City Southern R. Co.* v. *Lewis*, 80 Ark. 396, 97 S.W. 56 (1906), and *Jolley* v. *Meek*, 185 Ark. 393, 47 S.W. 2d 43 (1932). Of course in this instance, in addition to the testimony of King, there is the outright admission of appellants that King had started home at 2:30 on the date of the accident and that his truck stalled a few miles west of Stamps. Consequently we find no fact issue to be submitted to the jury as to whether King had a duty to perform for his employer while enroute to his home and appellants were not entitled to go to the jury on this exception to the general rule.

Neither do we find anything in *Phillips Cooperative Gin Co.* v. *Toll, supra,* contrary to the general rule. There W. T. Jackson was not driving his own vehicle but the vehicle of his father who was also the president of the board of directors of the gin company and the

check allegedly due him for hauling was made out to the manager of the gin company and bore only the notation "W. T. Jackson Trucking". The check was endorsed by the manager and never received by Jackson. Furthermore, there the only issue was whether Jackson was an independent contractor. The issue of the scope of employment was not raised.

As we view the record here it shows that Claud King, working on a unit basis, had delivered the fruits of his labor to the pulpwood yard, received his pay and was on his way home in his own vehicle. The only conclusion we can draw from this testimony is that when King drew his pay and started home in his own vehicle, he was no longer under the control of any alleged employer. Consequently we find the trial court properly held that King was not in the scope of his employment at the time of the collision.

We wish to make it clear that we have only assumed that he was an employee and that the issue of whether he was or was not an employee has not been adjudicated.

Affirmed.