## McLARTY LEASING SYSTEM, INC. *v.*
## Lehman D. BLACKSHEAR and E. Sidney GROVES

CA 83-403                                    668 S.W.2d 53

Court of Appeals of Arkansas
Division I
Opinion delivered May 2, 1984

*Wright, Lindsey & Jennings,* for appellant.

*Richard L. Miller* and *F. H. Martin,* for appellees.

GEORGE K. CRACRAFT, Judge. McLarty Leasing System, Inc. appeals from a judgment dismissing its complaint against Lehman D. Blackshear and E. Sidney Groves as guarantors with prejudice. Blackshear and Groves cross-appeal from that part of the order which dismissed their third-party complaint against Ronnie Sleeth as a co-guarantor.

On December 12, 1979 the appellant McLarty Leasing System, Inc. entered into two identical leasing agreements with Big Three Transportation, Inc. in which McLarty leased seventy over-the-road tractors and trailers to Big Three for thirty-seven months at a stipulated monthly rental for each unit. Simultaneously, Lehman Blackshear, E. Sidney Groves and Ronnie Sleeth executed an addendum to each lease in which they guaranteed payment of all rentals and any amounts owed by Big Three to McLarty following surrender and sale of the leased equipment. Before the end of the term of these leases Big Three encountered financial difficulties, voluntarily surrendered possession of the leased equipment to McLarty, and instituted bankruptcy proceedings. The interest of the bankrupt in the leases was released by the bankruptcy court and the equipment was disposed of by McLarty under the lease agreement.

McLarty then brought this action against Blackshear and Groves on their guaranty for the amount of its loss allegedly resulting from the early termination of the lease agreements. Blackshear and Groves answered raising several defenses and filed a third-party complaint against Sleeth for contribution as a co-guarantor. Sleeth answered alleging that he had been released by McLarty from all obligation under the guaranty agreement.

The court sitting without a jury found no merit to any

of the defenses raised by appellees against appellant but, on finding the plaintiff had failed in its burden of proving damages and that the enforcement of certain provisions of the contract would be unconscionable, dismissed appellant's complaint with prejudice. As the trial court found no liability of Blackshear and Groves under the guaranty agreement it also dismissed their cross-complaint against Sleeth and made no finding as to Sleeth's obligation under the guaranty agreement.

We agree that the trial court erred in dismissing both the complaint and the cross-complaint and remand the case for a new trial on the issues raised in both the appeal and cross-appeal.

The lease agreement contained three separate provisions governing the rights and liabilities of the parties on termination of the contract. Paragraphs 3 and 4 governed the rights and obligations of the parties in the event all of the monthly payments were timely made and the equipment was returned to the lessor at the end of the term. Paragraph 4 provided that at termination of the lease the vehicles would be returned to the lessor who shall sell each vehicle at the highest available *"net wholesale figure"* which was defined as the sale proceeds less direct cost of such sale, including but not limited to reconditioning, transportation charges and all other costs arising directly from the holding for sale and the sale of each vehicle. It further provided that in order to obtain the highest available *"net wholesale figure"* the lessor shall require three closed, bona fide bids from three prospective buyers and that the vehicle be sold to the highest bidder.

Paragraph 5 governed the parties' rights and liabilities in the event of early termination by mutual agreement. Paragraph 5 provided as follows:

> 5. *EARLY TERMINATION.* From time to time as mutually agreed upon by the Lessor and Lessee, any Vehicle may be terminated before the full intended lease term as indicated by Schedule "A". The remaining liability of Lessee under such early termination

shall be calculated by the following formula:

> The *Original Lease Value,* as specified on Schedule "A", shall be reduced by all Monthly Rental Payments made on such Vehicle. The resulting amount will be further reduced by a refund for interest not incurred by Lessor due to early termination, and further adjusted by the balance, if any, remaining in the Escrow Account for such Vehicle, and the resulting figure shall be the *Depreciated Residual Value* for said Vehicle. In the event the Net Wholesale Figure as defined in Paragraph 4, is greater than the Depreciated Residual Value, it will be paid to the Lessee. *In the event the Net Wholesale Figure is less than the Depreciated Residual Value, the difference between the two amounts shall be paid by Lessee to Lessor.* [Emphasis supplied]

Paragraph 15, found to be unconscionable, governed in the event of default by breach of any of the terms, conditions or provisions of the agreement, or institution of proceedings in bankruptcy. The rights, duties and obligations of the parties were substantially different in each of the three situations. It was admitted in argument by both parties that the return of the vehicles in this instance was an "early termination" and Paragraph 5 governed.

The reasonableness of Paragraphs 4 and 5 was not questioned by the parties. Nor were they found to be unconscionable by the trial court. John Vaughn testified that all but seventeen of the leased vehicles were each sold for the highest of three sealed bids. The "original lease value" of each vehicle sold was specified in the lease agreement and was easily ascertainable. Vaughn testified that in arriving at the "depreciated residual value" he had followed the provisions of Paragraph 5 by first reducing the "original lease value" by all monthly rental payments paid on each vehicle, further reducing it by a refund for interest not accrued by reason of early termination, and then adjusting for the balance, if any, remaining in the escrow account for each vehicle. He testified that in arriving at "net wholesale figure" he had reduced the actual sale price by the direct cost

incurred in locating, transporting and reconditioning each vehicle. He testified to the specific amount for which each vehicle was sold and listed separately the actual cost incurred in the sale of each. The accuracy of the difference between "net wholesale value" and "depreciated residual value" as computed by him was not questioned at any time. There was no other direct testimony on any of those issues and none was adduced to infer that his calculations were inaccurate or his testimony not trustworthy. When the appellant concluded its case in chief the appellees rested their case and put on no proof.

Vaughn further testified that the sealed bids received on seventeen of the vehicles were rejected as being grossly inadequate. Rather than sell those vehicles they had negotiated new leases at monthly rentals which substantially mitigated the loss which would have resulted from a sale. He testified to the specific amount of loss to McLarty resulting from early termination applicable to each vehicle leased to other persons. This testimony was not disputed. The court made no finding on the question of whether the re-leasing of some of the vehicles rather than sale of them was a reasonable exercise of McLarty's duty to mitigate the damage.

If the sales were conducted and the loss on each vehicle was computed in the manner Vaughn stated, the appellant at least proved damage in some amount. The court could only have found the burden of proving damage had not been met by totally disregarding the uncontradicted testimony of Vaughn. Since Vaughn was not a party to the action it cannot be said that his testimony was disputed as a matter of law, but he was an employee of a party and his testimony would be subject to much closer scrutiny than that of a wholly disinterested witness. Under our established rules of law the trier of fact is not bound to accept the testimony of any witness even if uncontradicted and is the judge of the weight of the testimony and credibility of the witnesses. It does not, however, have the right to arbitrarily disregard the testimony of any witness and where the uncontradicted testimony of even an interested witness is unaffected by any conflicting inferences to be drawn from it, and is not

improbable, extraordinary or surprising in its nature or there is no other ground for hesitating to accept it as truth, there is no reason for denying the finding of verity dictated by such evidence. *Knighton* v. *International Paper Co.*, 246 Ark. 523, 438 S.W.2d 721 (1969); *St. Louis-San Francisco Rwy. Co.* v. *Harmon,* 179 Ark. 248, 15 S.W.2d 310 (1929).

We conclude that it was arbitrary for the trial judge to totally disregard Vaughn's testimony. It was consistent in its entirety and no fact or circumstance was offered into evidence which contradicts or conflicts with it. We further conclude that the appellant proved damage in some amount resulting from the early termination of the lease which the trial court must determine at a new trial.

We do not find merit in the contention that the contract was one of adhesion and should not be enforced. Neither party has pointed out to us any evidence tending to show that the bargaining power of the parties was wholly unequal or other circumstances which would give rise to a conclusion that the contract was unenforcible for that reason. That argument is based upon the following conclusion of law by the trial court:

> 1. That the provision of the lease agreements purporting to make notice of the time, place and manner of sale of the equipment by the plaintiff unnecessary is an unconscionable provision in a contract of adhesion; is in conflict with the letter and spirit of the Uniform Commercial Code; and is void.

The only provision in the lease agreement which provided for sale of the leased equipment without notice to the lessee was contained in Paragraph 15 which provided for the rights and obligations of the parties in the event of default or failure to comply with other conditions of the lease. The parties concede that the provisions of Paragraph 5 govern these rights and obligations in the case under review and Paragraph 15 has no application.

By cross-appeal the appellees contended that the court erred in not ruling that Sleeth had not been released from his

obligation under the guaranty agreement. Under the court's ruling it was not necessary to reach that issue. On retrial the question of whether Sleeth was released will be an issue of fact for the trial court to determine.

Reversed and remanded.

COOPER and CORBIN, JJ., agree.