Beulah Irene MALOY *v.*
STUTTGART MEMORIAL HOSPITAL

93-606                                                  872 S.W.2d 401

Supreme Court of Arkansas
Opinion delivered March 28, 1994

448

*Robert Dittrich*, for appellant.

*Bynum & Kizer*, by: *F. Wilson Bynum, Jr., Maxie G. Kizer*, and *Keith B. Hall*, for appellee.

STEELE HAYS, Justice. This is an appeal from a writ of garnishment on a certificate of deposit held in joint tenancy. The trial court found the funds were in fact those of the debtor and sustained the garnishment. The debtor appealed to the Court of Appeals and the order was affirmed by a three to three decision. *See Maloy* v. *Stuttgart Memorial Hospital*, 42 Ark. App. 16, 852 S.W.2d 819 (1993). We granted appellant's petition to review. When we review a decision of the Court of Appeals under Rule 1-2(f) of our rules we review the case as though it had been originally filed in this court. *Patterson* v. *State*, 267 Ark. 436, 591 S.W.2d 356 (1979). *See also Cagle Fabricating & Steel, Inc.* v. *Patterson*, 309 Ark. 365, 830 S.W.2d 857 (1992); *Hall's Cleaners* v. *Worthen*, 311 Ark. 103, 842 S.W.2d 7 (1992); and *Leach* v. *State*, 311 Ark. 485, 845 S.W.2d 11 (1993).

Beulah Irene Maloy, appellant, was indebted to the Stuttgart Memorial Hospital, appellee, for $6,234.94. On June 8, 1990, a default judgment was entered in favor of the hospital. On September 16, 1991, the hospital served a writ of garnishment on Farmers and Merchants Bank of Stuttgart, Arkansas. The bank responded that it had two certificates of deposit totalling $8,620.79, held jointly in the names of appellant and her mother, India Ola Glover.

On September 27, 1991, appellant filed her objection to the garnishment and a motion to dismiss the writ on the grounds that the funds on deposit were not hers, but her mother's. On the same date an order directing the garnishee to pay the sum of $7,703.79 to the hospital was filed with the clerk of the circuit court. It was agreed between the parties that the hospital's attorney would hold the sums paid to him pursuant to the writ of garnishment until a hearing could be held upon appellant's motion to dismiss.

A hearing was held in the circuit court of Arkansas County on December 19, 1991, and only the appellant presented evidence — testimony from her mother, her brother and herself. On January 24, 1992, the motion to dismiss the writ of gar-

nishment was denied and the previous order directing delivery of $7,703.79 to the hospital was allowed to stand.

██ ██ The seminal case in Arkansas on the question of garnishment of a joint banking account is *Hayden* v. *Gardner*, 238 Ark. 351, 381 S.W.2d 752 (1964), where the court set down the following rules:

> 1. [T]he joint account should be garnishable only in proportion to the debtor's ownership of the funds, as to which parol evidence is admissible to show the respective contributions of each depositor, as well as any intent of one to make a gift to the other.
>
> * * *
>
> 2. [The court should first consider that] *all* of the joint bank account [is] prima facie subject to garnishment and that the burden [is] on each joint depositor to show what portion of the funds he or she actually own[s]. [Our emphasis.]

The court concluded:

> We believe this is the fair and reasonable rule because the depositors are in a much better position than the judgment creditor to know the pertinent facts.

This appears to be the majority rule. *See* Note, *Joint Bank Account as Subject of Attachment, Garnishment, or Execution by Creditor of One of the Joint Depositors*, 11 A.L.R.3rd 1465 (1967 and Supp. 1993); *Baker* v. *Baker*, 710 P.2d 129 (Okla. App. 1985); The approach was summarized in *Traders Travel Intern, Inc.* v. *Howser*, 753 P.2d 244 (Hawaii 1988):

> We now adopt the majority view that the debtor presumptively holds the entire joint bank account but may disprove this supposition to establish his or her actual equitable interest. In this way, the debtor, at an evidentiary hearing, may prevent the judgment creditor from seizing more than the debtor's fair share of the account. The judgment creditor, moreover, may introduce its own evidence on this issue. Should the debtor fail to show by a preponderance of the evidence that he or she does not possess the whole joint account, however, then the judgment creditor

may confiscate all the deposits therein to satisfy the garnishment.

Under this approach, the hearing in this case began with the presumption that appellant was entitled to the whole of the certificate of deposit. The burden was on appellant to disprove this proposition and establish her actual interest in the CD. The crucial testimony was given by appellant's mother, Ms. Glover. She testified that the source of the funds was from various articles owned by her and her late husband liquidated after his death. She put the proceeds into several joint CDs with each of her children. Only the CDs held jointly with appellant were at issue.

As to her reasons for putting the funds in these joint CDs, Ms. Glover gave divergent accounts: On the one hand she intended the money to remain hers throughout her life and at her death to be divided among her children. She explained this was so the children could more easily pay her bills if she became incapacitated. On the other hand she stated she put the money in joint names with her children to enable her to keep the money from creditors, a nursing home in particular, if she should have to enter one. She testified she'd heard that could be done, that she knew this at the time she opened the joint CDs and that her intent was to put the money beyond the reach of a potential nursing home creditor.

■■ When there are issues of credibility and conflicting testimony, we defer to the superior position of the factfinder to resolve those questions. *Guaranty National Insurance* v. *Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993). The trial court made no findings in this case but simply held for the hospital, creating the inference that Ms. Glover failed to persuade the trial court she intended to keep the money for herself.

■ Appellant contends the only argument for sustaining the garnishment is that Ms. Glover intended a gift to appellant and there was no proof of actual delivery. *Coristo* v. *Twin City Bank*, 257 Ark. 554, 520 S.W. 2d 218 (1975). Without delivery, appellant concludes, there is insufficient proof to show any intention to make a gift. Appellant's argument is unpersuasive for it misinterprets the burden of proof. There is no necessity for the hospital to prove a gift, so whether or not delivery was demon-

strated is irrelevant. The analysis begins with the presumption that all the funds are garnishable. It is incumbent on the appellant as the depositor to prove otherwise. *Hayden* v. *Gardner, supra.* The hospital's right to the funds is not dependent on finding a gift to appellant. Its claim is presumptively established as a judgment creditor having garnished funds of which the judgment debtor is a joint depositor.

As to remanding the case to the trial court to have Ms. Glover joined as a party, suggested by the dissent, neither party has raised this issue and we see no reason to do so on our own.

While the joinder of parties will not be invariably waived if not raised, *see Martin* v. *Wilks*, 490 U.S. 755 (1991), the necessity for joinder fades when that party's interest has been fairly litigated. As the *Martin* opinion points out:

> We have recognized an exception to the general rule [that a stranger to a judgment is not bound by it], when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone else with the same interests who is a party.

At 762, fn2.

This court came to the same result in *Carrigan* v. *Carrigan*, 218 Ark. 398, 236 S.W.2d 579 (1951). In that case we held that where the wife of a party in a former suit had testified at that trial, and in fact was the witness whose testimony consumed a large part of the record, res judicata would be applied to her in a subsequent proceeding. We said:

> The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by the employment of counsel, filing of an answer, payment of expenses of costs of the action, or doing of such other acts as are generally done by the parties.

We are not suggesting that an individual similarly situated

to Ms. Glover could not be properly joined as a party at this stage of the proceedings, upon her own request and under the appropriate circumstances. In this case, however, Ms. Glover was an active participant in the proceeding before the trial court. In fact, it was on her testimony that the case was decided. Nor has the dissent suggested how Ms. Glover's rights could have been better protected. Ms. Glover and the appellant clearly had the same interests and both testified to those ends.

■ In the absence of apparent prejudice or a request to intervene, we do not find it appropriate, under the equitable doctrine that governs ARCP 19, to remand the case sua sponte. *See Wright and Miller, Federal Practice and Procedure*, § 1609 at 143; § 1611 at 171-176 (1986).

■ The dissenting opinion cites the rule mentioned in *McLarty Leasing Systems, Inc.* v. *Blackshear*, 11 Ark. App. 178, 668 S.W.2d 53 (1984). That rule, retiring at best, expressly excludes testimony which is self-contradictory or from which differing inferences may be drawn. *Jolley* v. *Meek*, 185 Ark. 393, 47 S.W.2d 43 (1932); *Kansas City Southern Railway Co.* v. *Lewis*, 80 Ark. 396, 97 S.W. 56 (1906). Here, the testimony of Mrs. Glover, as we have noted, contained conflicting versions of her purpose in establishing the joint CDs. We cannot conclude that her testimony was arbitrarily disregarded by the trial court.

Affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. I dissent. The majority opinion will have a greater impact on the citizens of Arkansas than appears at first glance. Many families, as is common practice, create accounts in the names of a parent and one or more child. Certainly most are unaware how easily a creditor of one of the children can access the funds placed in those accounts, which is the result of the majority's ruling.

The majority relies on *Hayden* v. *Gardner.* 238 Ark. 351, 381 S.W.2d 752 (1964), calling it the seminal case in Arkansas on the question of garnishment of a joint banking account. *Hayden* determined that a joint account should be garnishable only in proportion to the debtor's ownership of the funds, as to which parol

evidence is admissible to show the respective contributions of each depositor, as well as any intent of one to make a gift to the other. The rule in *Hayden* makes sense. Noticeably absent from the majority's result, however, is a direction to remand so as to join the co-tenant, the mother of the appellant, as was done in *Hayden*. The mother, Mrs. India Glover, was called as a witness but was not a party to this action. The *Hayden* court ordered the wife to be added as a party upon remand in order to determine the extent of contribution or ownership of the certificate of deposit held jointly by the debtor husband and his wife. The court in *Hayden* clearly stated:

> It goes without argument that Mrs. Gardner has (or might have) some interest in the money in the joint account. Therefore she should have been made a party to the garnishment proceedings against the bank. This can be done upon remand.

*Id.* at 354, 381 S.W.2d at 754. If we are to follow the ruling in *Hayden*, then the majority should have, at minimum, remanded for this purpose.

Like the federal rule, ARCP Rule 19 provides the means for adding parties that are necessary or indispensable; i.e. compulsory joinder. The emphasis is placed on what practical effects a judgment might have upon an absent party. *See* Reporter's Notes to Rule 19 (1993). Here, an elderly woman testified regarding her ownership of monies; the result of which was that her monies were taken without being made a party to the action and her rights unprotected. The factors should be used to determine on an ad hoc basis "whether in equity and good conscience the action should proceed among the parties before it" despite the absence of a party. *See* ARCP Rule 19; D. Newbern, *Arkansas Civil Practice and Procedure* § 5-3 (2d ed. 1993). This is certainly a case in which in equity and good conscience, the mother of appellant should have been joined as a party. Should her claim then be regarded as *res judicata*, as the majority would assert, then all the more reason she should have been joined below.

Further, the majority's result ignores the overwhelming weight of the evidence. The evidence submitted leads to the conclusion that appellant did not have any ownership interest in the

certificates of deposit. The testimony of appellant, her mother, and her brother revealed that all the monies in the certificates of deposit belonged to the mother, Mrs. Glover, and was derived thirteen years beforehand through the sale of assets after the death of her husband. The mother testified that she wanted the monies to eventually go to her children upon her death. Appellant and her brother never considered the money theirs and knew of their mother's intentions. The most noteworthy pieces of evidence were the three certificates of deposit introduced into evidence, all in the names of appellant or Mrs. India Ola Glover. Mrs. Glover had signed the notice of penalty for early withdrawal for each of the certificates and had signed notices for withdrawal of interest. Neither appellant nor her brother ever exerted any ownership or control over the certificates of deposit. This evidence was uncontradicted by appellee.

The court of appeals pointed out in *McLarty Leasing System, Inc.* v. *Blackshear*, 11 Ark. App. 178, 182-83, 668 S.W.2d 53, 56 (1984) the rule with regard to uncontradicted testimony:

> Under our established rules of law the trier of fact is not bound to accept the testimony of any witness even if uncontradicted and is the judge of the weight of the testimony and credibility of the witnesses. It does not, however, have the right to arbitrarily disregard the testimony of any witness and where the uncontradicted testimony of even an interested witness is unaffected by any conflicting inferences to be drawn from it, and is not improbable, extraordinary or surprising in its nature or there is no other ground for hesitating to accept it as truth, there is no reason for denying the finding of verity dictated by such evidence.

*See also Knighton* v. *International Paper Co.*, 246 Ark. 523, 438 S.W.2d 721 (1969); *Maloy* v. *Stuttgart Memorial Hospital*, 42 Ark. App. 16, 852 S.W.2d 819 (1993) (Mayfield, J., dissenting). Even if one agrees with the majority that there were two conflicting accounts of what Mrs. Glover's intent was in setting up the accounts, the certificates themselves and Mrs. Glover's actions in endorsing the certificates one time to receive interest income are clear and convincing evidence of the mother's claim of ownership.

The evidence presented in this case and the manner in which the result is reached leads me to the inescapable conclusion that the trial court and the majority at least partially base their decision on an intervivos gift of the certificates to appellant. This clearly runs afoul of the rules cited in our recent case of *Irvin* v. *Jones*, 310 Ark. 114, 117, 832 S.W.2d 827, 828 (1992) wherein we emphasized the following:

> 'In all gifts a delivery of the thing given is essential to their validity; for although every other step be taken that is essential to the validity of a gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite, without which the gift fails, regardless of the consequences. . . .'

(quoting *Ragan* v. *Hill*, 72 Ark. 307, 80 S.W. 150 (1904)).

In the instant case, there was no delivery. The mother maintained possession. The mother alone took interest income. Appellant never asserted nor ever intended to assert ownership over the funds clearly placed in both names for the purpose of caring for the mother. The actions taken with regard to the certificates coupled with the uncontradicted testimony of the mother, appellant, and the brother cannot be summarily disregarded. The decision below and now here is arbitrary and should not be allowed to stand.