Cite as 2025 Ark. 183

# SUPREME COURT OF ARKANSAS
**No.** CV–23–234

|  |  |
|---|---|
|  | **Opinion Delivered:** November 20, 2025 |
| REBECCA SKALA, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF SIR CHRISTOPHER EARNEST WALKER SKALA, DECEASED, AND AS GUARDIAN OF THE ESTATE OF XAVIOR ROBERT DAWSON SKALA, A MINOR; AND JAMES GARDNER, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF TAMMY GARDNER, DECEASED<br><br>APPELLANTS | APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT [NO. 32CV-21-245]<br><br>HONORABLE HOLLY MEYER, JUDGE<br><br><u>REVERSED AND REMANDED; COURT OF APPEALS OPINION VACATED</u>. |
| V. |  |
| COMFORT SYSTEMS USA, INC.; AND COMFORT SYSTEMS USA (ARKANSAS), INC.<br><br>APPELLEES |  |

**KAREN R. BAKER, Chief Justice**

Appellants, Rebecca Skala, as special administrator of the estate of Sir Christopher

Earnest Walker Skala, deceased, and as guardian of the estate of Xavior Robert Dawson

Skala, a minor; and James Gardner, as special administrator of the estate of Tammy Gardner,

deceased (collectively, "appellants") filed an interlocutory appeal of the Independence

County Circuit Court's order granting summary judgment in favor of appellees Comfort

Systems USA, Inc.; and Comfort Systems USA (Arkansas), Inc. (collectively, "Comfort

Systems"). Appellants present three arguments on appeal: (1) there are genuine issues of material fact in dispute that preclude summary judgment; (2) the circuit court erred as a matter of law in concluding that the going-and-coming rule precluded liability; and (3) the circuit court erred in granting summary judgment on appellants' direct-liability claims. We reverse and remand.

This appeal stems from a fatal motor-vehicle accident that occurred on September 23, 2021. On the day of the accident, Cody Conboy, an employee of Comfort Systems Arkansas, was driving from his home in Greenbrier to a jobsite in Ash Flat when his vehicle crossed the center line of the highway and struck a daycare transport van. The driver of the van, Tammy Gardner, and five-year-old Christopher Skala were killed in the accident. Three-year-old Xavior Skala was injured in the accident.

On October 28, 2021, Rebecca Skala, the mother of Christopher and Xavior Skala, filed a complaint against Comfort Systems and Conboy. Skala alleged that Conboy was hired as a welder for Comfort Systems in January 2021. According to the complaint, as part of Conboy's job duties, he would travel to jobsites around Arkansas. Prior to the accident, Conboy had been assigned to a jobsite in Ash Flat. Skala contended that traveling to Ash Flat was contemplated as part of his employment with Comfort Systems, and Conboy received additional compensation for his living and travel expenses. Skala alleged a direct-negligence claim against Conboy and direct- and vicarious-liability claims against Comfort Systems under the doctrine of respondeat superior.

On the same day, Skala filed her first set of requests for admission propounded to Comfort Systems and Conboy. On November 3, Conboy filed his separate answer denying

2

each material allegation of Skala's complaint. On November 4, Conboy filed his answers to Skala's requests for admissions. Conboy admitted that he was an employee of Comfort Systems, but he could not admit or deny that he would be considered an employee at the exact time of the accident. Conboy denied that he was liable for injuries sustained at the time of the accident, and he denied that he was negligent in the use and operation of the vehicle he was driving at the time of the accident

On November 30, Comfort Systems filed its answer admitting that the motor-vehicle accident occurred on September 23, 2021. Comfort Systems Arkansas admitted that it employed Conboy at certain points in time. Comfort Systems Arkansas admitted that Conboy's job duties included working at jobsites at various locations and that he received certain compensation or reimbursement regarding travel expenses. Comfort Systems denied any and all allegations of negligence, fault, proximate cause, and liability. Specifically, Comfort Systems asserted that Conboy was not acting in the course and scope of any employment or agency relationship with Comfort Systems at the time of the motor-vehicle accident.

Also on November 30, Comfort Systems filed its responses to Skala's first set of requests for admission. Comfort Systems denied that Conboy was negligent in the operation of the vehicle he was driving on September 23, 2021, and denied that Conboy was liable for injuries suffered. Additionally, it denied that Conboy was an employee of Comfort Systems on the date of the accident.

On March 22, 2022, James Gardner, as special administrator of the Estate of Tammy Gardner, filed a separate complaint against Conboy and Comfort Systems alleging both

3

direct and vicarious liability. On May 23, 2022, Comfort Systems filed an unopposed motion for consolidation seeking to consolidate Skala's case with the Gardner case. The order to consolidate was entered on July 20, 2022.

On July 25, 2022, appellants filed their motion for partial summary judgment against Comfort Systems Arkansas asserting that there is no genuine issue as to any material fact that Conboy was in the scope of his employment at the time of the accident. Appellants argued that this is true for two reasons: (1) there is no genuine issue of material fact that Conboy was engaged in the transaction of business that had been assigned to him by his employer, Comfort Systems; and (2) Conboy's trip to Ash Flat on the morning of the accident can reasonably be said to have been contemplated as part of his employment and in furtherance of Comfort Systems' interest.

As to appellants' position that Conboy was engaged in the transaction of business assigned to him by Comfort Systems, they assert that Conboy was acting in the scope of his employment in driving to Ash Flat. On the day of the accident, Comfort Systems assigned Conboy to work at the Emerson Factory construction project in Ash Flat. Since working for Comfort Systems, all the work performed by Conboy had been out of town, which required him to travel to assigned jobsites. Comfort Systems assigned and controlled the location where employees such as Conboy worked and also required Conboy to arrive at the jobsite at a specific time. Specifically, Conboy was to arrive at the Emerson Factory location at 7:00 a.m. On the day of the accident, apart from his goal of getting to the assigned jobsite in Ash Flat, Conboy had no other reason to be driving on Highway 167 at 5:51 a.m.

4

Next, appellants argued that Conboy's trip to Ash Flat on the morning of the accident can reasonably be said to have been contemplated as part of his employment and in furtherance of Comfort Systems' interest. Appellants argued that Conboy's employment with Comfort Systems included significant travel to out–of–town jobsites and that Comfort Systems compensated Conboy for his travel. In the months leading up to the accident, Conboy was working at jobsites in Arkadelphia, Ash Flat, and the state of Oklahoma. In January 2021, when Conboy applied to work at Comfort Systems as a welder, he was specifically asked, "Can you travel if a job requires it?" Prior to his employment, Conboy was required to sign an authorization allowing Comfort Systems to obtain his driving record. Comfort Systems informed Conboy that prior to being hired, his "driving records [would] be checked." Appellants point out that the job requirements for a first–year welder, like Conboy, specifically require him to have the "ability travel, as needed, for projects." Appellants argued that because traveling was such an intrinsic part of the employees' jobs, Comfort Systems developed a travel policy to pay for the travel time of its employees. The policy compensated employees for either travel time or per diem and specifically states as follows:

> **TRAVEL TIME:** The Company recognizes that out of town work can place hardships on employees required to be on site, therefore in order to minimize this employees are eligible for paid drive time of ½ hour per day for distances greater than 40 miles from their home or from the office, whichever is less, or for one hour per day of drive time for distances greater than 50 miles from their home or the office, whichever is less. Employees residing greater than 70 miles from the site may be paid $100.00/night per diem or they may decide to commute from their home to the job site in exchange for paid drive time. ***If the driving distance from an employee's home address to the job site is greater than 100 miles, they may be paid the time it takes to drive.*** If an employee accepts per diem they must stay out of town. If it is discovered that an employee is commuting to the site and accepting per diem, this may be grounds for dismissal. The company reserves the right to modify the above options

according to the situation. Travel time will be paid at the regular hourly rate and will not count towards a full 40 hour week.

(Emphasis in original.)

After the accident, Conboy was given a verbal warning for violating the travel policy because he was paid per diem for the week of the accident, and instead of staying out of town, he went home at the end of the workday. Appellants argued that Conboy's violation of the travel policy was inconsequential because the standard is not which type of compensation Conboy was receiving at the time of the accident but whether his actions fell within the scope of employment. Appellants pointed out that Comfort Systems did not object to Conboy commuting from his home to the jobsite. Instead, Comfort Systems only took issue with Conboy's selection of the wrong type of reimbursement—per diem rather than paid travel time.

As to the furtherance of Comfort Systems' interests, appellants argued that the only reason Conboy was traveling on the morning of the accident was because he was attempting to get to the jobsite assigned by Comfort Systems. In fact, Conboy's direct supervisor, Andy Fink, testified that trips like the one Conboy was performing on the morning of the accident directly benefited Comfort Systems. Appellants argued that having employees travel to out-of-town jobsites is an essential component to how Comfort Systems does business.

On August 11, 2022, Comfort Systems filed its motion for summary judgment arguing that Conboy was not on the job at the time of the collision; he was not under the control of his employer; and he was not performing any assigned task in furtherance of the his employer's business while traveling from home to work in his personal truck. Comfort Systems argued that Conboy's job was to weld and that no part of his job duties involved

6

driving his truck. Comfort Systems further argued that while Conboy's job required him to arrive to the jobsite on time, Comfort Systems Arkansas had no control over what he drove, when he drove, how he drove, or what route he took. It argued that Conboy did not further the interests of his employer until he started performing his welding job on the site. Comfort Systems contended that Conboy was not acting in the course and scope of his employment at the time of the accident and that appellants' theory of liability under respondeat superior was therefore unsupported by law.

As to the travel policy, Comfort Systems admitted that the policy allows an employee traveling to a jobsite to be compensated for either travel time or per diem. If an employee elects per diem, then the policy requires that the employee stay out of town. The employee cannot accept the per diem and then commute from home to the jobsite. For the Ash Flat job, Conboy elected per diem and received the $500 ($100 per day for five days) in his account the week before the accident. However, contrary to his election, Conboy did not stay out of town but commuted to and from home. Comfort Systems acknowledged that Conboy received a written warning for this violation of the travel policy.

Comfort Systems pointed out that Arkansas follows the going and coming rule in workers'-compensation cases. However, it asserted that the Arkansas appellate courts have not had the occasion to rule whether the going-and-coming rule also extends to tort cases based on respondeat superior. It argued that the rationale for the restriction of liability imposed by the going-and-coming rule, whether in workers'-compensation or tort law, is that the employee's commute is not "an act in furtherance of the master's business or in line with the servant's duties." Comfort Systems argued that the existence of the travel policy

and Conboy's violation of the policy did not create an exception to the going and coming rule.

On August 12, 2022, Comfort Systems filed its response to appellants' motion for partial summary judgment. It argued that appellants' motion must be denied because, as a matter of law, traveling to work is not in the course and scope of employment and cannot be the transaction of the employer's business.

On August 25, Conboy filed his motion to adopt appellants' motion for partial summary judgment against Comfort Systems. On the same day, appellants filed their reply in support of their motion for partial summary judgment. They argued that Comfort Systems' response failed to cite proof in the record that Conboy was not in the scope of employment at the time of the collision. Instead of meeting proof with proof, appellants argued that Comfort Systems advocated for the application of a workers'-compensation standard, the going-and-coming rule. Appellants contended that the going-and-coming rule is not controlling. Citing *Van Dalsen v. Inman*, 238 Ark. 237, 379 S.W.2d. 261 (1964), appellants argued that this court ruled that workers'-compensation cases are not applicable to master and servant cases. Further, they argue that Comfort Systems provides no proof to rebut that Conboy was engaged in the transaction of business that had been assigned to him by Comfort Systems and that Conboy's trip to Ash Flat on the morning of the wreck was reasonably contemplated as part of his employment and in furtherance of Comfort Systems' interests.

On September 1, appellants filed their response to Comfort Systems' motion for summary judgment. Appellants argued that Comfort Systems' business model involves

8

sending its field employees to remote jobsites in and out of Arkansas. They argued that the going-and-coming rule has no application here. Thus, they maintained their position that Comfort Systems was liable for Conboy's negligence under the doctrine of respondeat superior.

On September 16, Gardner filed his response to Comfort Systems' motion for summary judgment. Gardner adopted Skala's motion for summary judgment as well as Skala's response to Comfort Systems' motion for summary judgment. Additionally, Gardner argued that the factual issue of whether Conboy was not "on the job" or "under control" of Comfort Systems, as presented in Comfort Systems' motion, is clearly controverted. However, Gardner pointed out that according to Comfort Systems' own admission, Conboy was issued a warning for his "violation of the travel policy." Gardner argued that this warning was a clear indication of Comfort Systems Arkansas' intent to exercise control over out-of-town travel such as that which is at issue here. Gardner also argued that Comfort Systems Arkansas took a direct interest in safety issues related to travel by its employees, this was demonstrated by requiring authorizations from employees to obtain their driving records. Gardner argued that there would be no grounds for obtaining such records if travel by Comfort Systems' employees was not within the scope of its supervision of those employees. Gardner argued that Comfort Systems benefited from its ability to provide welding services by employees the company trusts to different jobsites.

On September 23, Comfort Systems filed its final reply to appellants' responses to the motion for summary judgment. Comfort Systems replied that the appellants ignore the fact that Conboy's job was not to drive but to weld. Thus, Conboy driving to work was

9

not the transaction of Comfort Systems' business. Comfort Systems contended that the travel policy, and Conboy's violation of it, have nothing to do with whether driving to the jobsite constituted the transaction of its business. In response to appellants' reliance on the Comfort Systems document that lists the job duties and minimum requirements welder, Comfort Systems argued that appellants completely distort the text of this document. Comfort Systems argued instead, the "ability to travel, as needed, for projects" is a requirement but not a job duty or responsibility.

On October 4, 2022, a hearing on all motions for summary judgment was held. On January 5, 2023, the circuit court informed counsel by letter that it was granting Comfort Systems' motion for summary judgment and denying appellants' and Conboy's motions for summary judgment.

On February 21, 2023, the circuit court entered its findings of facts and conclusions of law granting summary judgment in favor of Comfort Systems and dismissing with prejudice all of appellants' claims against Comfort Systems. The order noted that the appellants' claims against Conboy remain pending. The circuit court concluded that the going-and-coming rule applied in workers'-compensation cases and should be extended to respondeat superior liability cases on the basis of established principles of Arkansas law. The court explained that this court, if presented with this issue, would apply the going-and-coming rule to respondeat superior liability cases. The circuit court further found that Conboy was not acting in the course and scope of his employment when he drove his truck from his home in Greenbrier to Ash Flat on September 23, 2021; Conboy was not engaged in the transaction of his employer's business at the time of the accident; and Conboy's drive

10

from home to work on the day of the accident was not reasonably contemplated as part of his employment. It found that Comfort Systems Arkansas had no control over Conboy's travel decisions and did not benefit from his travel. Comfort Systems Arkansas benefited from Conboy's showing up at the jobsite on time, but not from his travel. The court found that when Conboy was traveling to a jobsite, it was on his own time. Because Conboy was not acting in the course and scope of his employment with Comfort Systems Arkansas at the time of the accident, the court found that appellants' direct-liability claims fail as a matter of law. Specifically, the court found that because Conboy was not on the job at the time of the accident, there can be no direct liability for failing to "train, supervise, monitor and control" Conboy. The circuit court also found that Conboy was not an employee of Comfort Systems USA and that appellants' claims against it therefore failed as a matter of law.

On March 9, 2023, appellants moved for entry of judgment and for Rule 54(b) Certification, which was granted on March 15. This case was then appealed to the Arkansas Court of Appeals, which reversed and remanded. *Skala v. Comfort Sys. USA, Inc.*, 2024 Ark. App. 599, 702 S.W.3d 438. On October 25, 2024, Comfort Systems filed a petition for rehearing. On December 4, 2024, continuing to reverse and remand the case, the court of appeals issued both a substituted opinion and a supplemental opinion on the denial of rehearing. After the substituted opinion was issued, Comfort Systems filed a second petition for rehearing, which was denied. Comfort Systems then filed a petition for review, which we granted on February 27, 2025. When we grant a petition for review, we treat the appeal

11

as though it had been originally filed in this court. *Whaley v. Beckham*, 2016 Ark. 196, 492 S.W.3d 65.

## I. *Standard of Review*

On appeal, appellants argue that summary judgment was inappropriate as to both their vicarious- and direct-liability claims. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c). A circuit court may grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Crockett v. C.A.G. Invs., Inc.*, 2011 Ark. 208, 381 S.W.3d 793. Summary judgment is not proper, however, when evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). In *Flentje v. First National Bank of Wynne*, 340 Ark. 563, 569–70, 11 S.W.3d 531, 536 (2000) (internal citations omitted), we explained, "[W]e only approve the granting of the motion when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admission on file is such that the nonmoving party is not entitled to a day in court, i.e., when there is not any genuine remaining issue of fact and the moving party is entitled to judgment as a matter of law. However, when there is no material dispute as to the facts, the court will determine whether reasonable minds could draw reasonable inconsistent hypotheses to render summary judgment inappropriate."

II. *Points on Appeal*

A. Vicarious Liability

We first turn to appellants' vicarious-liability arguments. Appellants argue that the circuit court erred as a matter of law in concluding that the going and coming rule precluded liability; and the circuit court erred in granting summary judgment on the issue of whether Conboy was acting within the scope of his employment with Comfort Systems at the time of the accident.

Appellants argue that the circuit court improperly applied the going and coming rule to this case involving respondeat superior liability. An employee traveling to and from the workplace is generally said not to be acting within the course of employment. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). The going-and-coming rule ordinarily precludes recovery for an injury sustained while the employee is going to or coming from his place of employment. *Id*. The rationale behind this rule is that an employee is not within the course of employment while traveling to or from his job. *Id*.

As stated above, the circuit court concluded that the going-and-coming rule, applied in workers'-compensation cases, should be extended to respondeat superior liability cases based on established principles of Arkansas law. The court further explained that if we were presented with this issue, we would apply the going-and-coming rule to respondeat superior liability cases. We disagree, and for the reasons that follow, we would instead apply our traditional respondeat superior liability framework to the present case.

Appellants argue that the circuit court erred as a matter of law by applying this workers'-compensation rule to a tort case in violation of this court's clear mandate to the

contrary. To support their position, appellants cite *Van Dalsen v. Inman*, 238 Ark. 237, 379 S.W.2d 261 (1964). In *Van Dalsen*, Inman was a salesman involved in a fatal motor-vehicle accident. On the day of his accident, Inman had driven to Little Rock to visit his wife at the hospital. On his way back from Little Rock, he stopped at his employer's office to leave a note under the door. After leaving his employer's office, he was involved in a fatal motor-vehicle accident in which he was killed and Van Dalsen was injured. A complaint was filed against Inman's estate and his employer asserting that Inman was negligent at the time of the accident and was acting within the scope of his employment. Inman's employer moved for summary judgment, which was granted. On review, we noted that the appellants had cited "workmen's compensation cases wherein salesmen have been awarded compensation for injuries sustained while returning home, and it is claimed that these cases govern in the case at bar." 238 Ark. 237, 242–43, 379 S.W.2d 261, 265. However, we explained that "the liability of the [employer] in the case at bar is to be determined by the 'scope of employment' cases involving master and servant, and not by the 'arising out of and in the course of employment' rule in workmen's compensation cases. The workmen's compensation cases are not applicable to a master and servant case, such as in the case at bar." 238 Ark. at 242–43, 379 S.W.2d at 265. Van Dalsen relied on *Frank Lyon Co. v. Oates*, 225 Ark. 682, 284 S.W.2d 637 (1955) (a workers'-compensation case specifically addressing the going-and-coming rule), but we rejected its application to a master and servant case such as Van Dalsen's. In applying our traditional respondeat superior analysis, we affirmed the grant of summary judgment in favor of the employer, explaining that Inman was not in the scope of his employment because he was on a private and personal mission at the time of the accident.

Below, Comfort Systems pointed out that Arkansas follows the going-and-coming rule in workers'-compensation cases. However, it asserted that the Arkansas appellate courts have not had the occasion to rule on whether the going-and-coming rule also extends to tort cases based on respondeat superior. Now, Comfort Systems takes the position that in *Knighton v. International Paper Co.*, 246 Ark. 523, 438 S.W.2d 721 (1969), decided five years after *Van Dalsen*, this court expressly applied the going-and-coming rule in a respondeat superior liability case. In *Knighton*, the employee had completed his work, delivered his last load, received payment, and was driving home in his personal vehicle. While this court did acknowledge the going-and-coming rule and its exceptions in *Frank Lyon Co.*, *supra,* in *Knighton* we went on to explain that "[t]he only conclusion we can draw from this testimony is that when [the employee] drew his pay and started home in his own vehicle, he was no longer under the control of any alleged employer. Consequently, we find the trial court properly held that [employee] was not in the scope of his employment at the time of the collision." 246 Ark. at 528, 438 S.W.2d at 724. Thus, in *Knighton*, rather than applying the going-and-coming rule, we instead applied the traditional respondeat superior analysis in considering the facts of that case.

Because this case involves respondeat superior liability, we hold that a traditional respondeat superior analysis applies. As such, the fact that Conboy was en route to his remote jobsite is just one of the issues to analyze in determining whether Conboy was within the scope of his employment with Comfort Systems at the time of the accident. Thus, we hold that the circuit court erred in determining that the going-and-coming rule precluded liability.

Next, appellants argue that the circuit court erred in granting summary judgment to Comfort Systems because genuine issues of disputed material fact existed regarding whether Conboy was acting in the scope of his employment at the time of the accident. Under the doctrine of respondeat superior, an employer may be held vicariously liable for the tortious conduct of an employee if the evidence shows that such conduct was committed while the employee was acting within the scope of employment. *Jackson v. Ivory*, 353 Ark. 847, 120 S.W.3d 587 (2003). For purposes of respondeat superior, whether an employee is acting within the scope of employment is not necessarily dependent upon the situs of the occurrence but on whether the individual is carrying out the object and purpose of the enterprise, as opposed to acting exclusively in his own interest. *J.B. Hunt Transp., Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995).

Contrary to appellants' argument that there are genuine issues of disputed material fact remaining, we hold that the facts are undisputed. However, reasonable minds could draw reasonable inconsistent hypotheses from the following undisputed facts: Conboy was required to sign an authorization allowing Comfort Systems to obtain his driving record; Conboy was required to have the "ability to travel, as needed, for projects"; Comfort Systems' had a business model of sending field employees to remote locations to perform skilled labor on projects; Comfort Systems adopted a travel policy to compensate its employees for travel time; Comfort Systems had the ability to discipline its employees for violations of the travel policy, and in fact, it reprimanded Conboy for traveling from home while selecting the per diem pay. We hold that reasonable minds could draw reasonable inconsistent conclusions from the above facts as to whether Conboy was in the scope of his

16

employment at the time of the accident. Stated differently, because reasonable persons might reach a different conclusion as to whether Comfort Systems can be vicariously liable under respondeat superior for Conboy's alleged negligence, summary judgment was inappropriate. In light of our discussion above and our standard of review, we reverse the circuit court's order granting summary judgment in favor of Comfort Systems.

## B. Direct Liability

For their final point on appeal, appellants argue that the circuit court erred in granting summary judgment on their direct-liability claims because Comfort Systems had not requested such relief. Appellants asserted claims of direct negligence against Comfort Systems that were based on Comfort Systems' pattern and practice of overworking employees, thus making them unsafe to drive and a hazard to the traveling public. However, Comfort Systems' motion for summary judgment was based solely on whether it was vicariously liable for the Conboy's negligence. Appellants argue that Comfort Systems provided no argument or factual basis upon which to grant summary judgment on appellants' direct-liability claims. They argue that Comforts Systems' failure to move for summary judgment on the direct-liability claims deprived appellants of the opportunity to respond. To support their position that the circuit court erred, appellants rely on *Young v. Staude*, in which this court explained that "[a] trial court cannot grant relief beyond that prayed for in the motion for summary judgment in ruling on that motion." 280 Ark. 298, 298–99, 657 S.W.2d 542, 543 (1983). Therefore, we hold that the circuit court erred when it granted summary judgment to Comfort Systems on the direct-liability claims.

Reversed and remanded; court of appeals opinion vacated.

17

Special Justice MARCIA HEARNSBERGER joins.

WOOD, HILAND, and BRONNI, JJ., dissent.

HUDSON, J., not participating.

**RHONDA K. WOOD, Justice, dissenting.** Employers generally have no liability to third parties when an employee causes an accident on the way to work. This is our general principle in Arkansas. Cody Conboy, a welder, caused a catastrophic accident while driving from his home to a job site. As a matter of law, Comfort Systems, his employer, should not be held liable on a respondeat superior basis for the accident. The undisputed facts put this case squarely within the general rule that an employee is not acting within his scope of employment when commuting to and from work.[1] I dissent because I would affirm the circuit court's decision to grant summary judgment on the respondeat superior claim filed against the employer.

Under common-law tort principles, an employer may be held liable for the conduct of an employee when the employee was acting within the scope of employment.[2] This means an employer faces responsibility when an employee is carrying out the object and purpose of the enterprise rather than acting in his or her own interest.[3] In *Knighton v. International Paper Co.*, we adopted the general rule "that an employee traveling from his

---

[1]I agree with the majority. We should not apply the specific going-and-coming rule, and its exceptions, from workers' compensation to scope-of-employment tort cases.

[2]*Sweeden v. Atkinson Imp. Co.*, 93 Ark. 397, 125 S.W. 439, 441 (1910); *Davis v. Kukar*, 235 Ark. 139, 142, 357 S.W.2d 275, 277 (1962).

[3]*J.B. Hunt Transp., Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995).

place of work to his home or other personal destination after completing his day's work cannot ordinarily be regarded as acting in the scope of his employment so to charge the employer for the employee's negligence in the operation of his own vehicle."[4] The Restatement (Third) of Agency explains this general rule well. An ordinary commute, without more, falls outside the scope of employment:

> In general, travel required to perform work, such as travel from an employer's office to a job site or from one job site to another, is within the scope of an employee's employment while traveling to and from work is not. However, an employer may place an employee's travel to and from work within the scope of employment by providing the employee with a vehicle and asserting control over how the employee uses the vehicle so that the employee may more readily respond to the needs of the employer's enterprise. An employee's travel to and from work may also be within the scope of employment if the employee does more than simply travel to and from work, for example by stopping for the employer's benefit to accomplish a task assigned by the employer.

Restatement (Third) Of Agency § 7.07, cmt. e (2006).

Should we depart from the general rule here? No. On the morning of the accident, Conboy was driving his own vehicle from his home in Greenbrier to the job site in Ash Flat. He was not traveling from Comfort Systems' office to the job site, was not traveling from one job site to another, was not driving a Comfort Systems vehicle, and was not en route to accomplish an assigned task for Comfort Systems. Thus, as a matter of law, Comfort Systems was not liable on a respondeat superior basis.

Let's review the facts the majority lists from which it believes a jury could draw inconsistent conclusions on the issue of respondeat superior: employer authorization to

---

[4] 246 Ark. 523, 526–27, 438 S.W.2d 721, 723 (1969).

access driving records, requirement of ability to travel to job sites, business model of remote job sites, travel reimbursement policy, and reprimand for abuse of travel policy. Now, compare these with the Restatement and our general rule. None of these facts fall within the exceptions that alter application of the general rule. An employer faces liability when it is able to exercise some level of control over the employee's action.

The Iowa Supreme Court considered similar facts and determined that remote travel along with travel reimbursement "did not establish a jury question as to whether [employee] was under the control of [employer]."[5] Its analysis is helpful. It explained that the employer had no right to control the employee before he reported to work, and no right to dictate the mode of travel, that the employee used a car, or how fast he drove.[6] The employer had no claim on the employee's time either before or after work was completed. Thus, the remoteness of the assignment and the travel policy did not create questions of fact because the employee's commute time was outside the employer's control; the employee furthered the employer's business only once he began work.[7] I would reach a similar conclusion. As a matter of law, Comfort Systems' travel policy and Conboy's remote travel did not move the needle to create material facts at issue for a jury on the theory of respondeat superior.

---

[5] *Jones v. Blair*, 387 N.W.2d 349, 356 (Iowa 1986).

[6] *Id.*

[7] *Id.; see also Walsh v. United States,* 31 F.3d 696 (8th Cir. 1994) (affirming that the military's further control of National Guard member (must travel the most direct route, etc.) was not enough to overcome respondeat superior as a matter of law)).

And we have consistently held that the scope-of-employment question can be resolved as a matter of law and does not have to be submitted to a jury. In *Knighton*, the parties disputed whether the employee, King, acted within the scope of employment. King drove his own truck to transport International Paper's products, drove it out of town to collect the timber, transported it to the employer, and then left to drive home when the accident occurred.[8] This court held, "[W]e find *no fact issue to be submitted to the jury* as to whether King had a duty to perform for his employer while enroute to his home and appellants were not entitled to go to the jury on an exception to the general rule."[9] We held that King acted outside the scope of his employment—as a matter of law.

Nor did a traveling salesman act within his scope of employment when returning home after driving outside his sales territory for a purely personal visit that did not involve business.[10] There, we reversed a jury verdict against the company because "[t]here was no evidence presented that [the] employee had engaged in any business on behalf of his employer after he left" the personal visit.[11]

Last, in *Van Dalsen v. Inman*, we affirmed summary judgment because there were no questions of fact for a jury. We explained that an employee did not act within the scope of

---

[8] *Knighton*, 246 Ark. at 525–26, 438 S.W.2d at 723.

[9] *Id*. at 527, 438 S.W.2d at 724 (emphasis added).

[10] *Orkin Exterminating Co. v. Wheeling Pipeline, Inc.*, 263 Ark. 711, 567 S.W.2d 117 (1978).

[11] *Id*. at 716, 567 S.W.2d at 120.

employment while returning home after dropping off a note at company headquarters.[12] We explained that while the employee digressed from a personal mission to carry out business of the employer, he was no longer within the scope of employment in his purely personal mission to return home. We have repeatedly found a commute is outside the scope of employment.

We are presented with undisputed facts bearing on the scope-of-employment question. Those facts demonstrate that Conboy was traveling to work to arrive at his scheduled start time. He drove his own vehicle from his home to the job site at an early hour because he chose to return home because he was homesick. He was on the road at that time only because he decided to return home the night before. Comfort Systems exercised no control over Conboy's decision or how he drove.[13] Consistent with our precedent, I would hold that these facts show that Conboy acted outside the scope of his employment as a matter of law.

The majority departs from our general rule and past precedent. It appears to create new exceptions to the general rule for employees who are traveling to remote job sites and receiving travel allowances. As a matter of law, this is erroneous. Most authorities reflect this view. The Restatement of Agency notes that it "is essentially [an employee's] own job of getting to or from work."[14] Employees generally act outside the scope of employment

---

[12] *Van Dalsen*, 238 Ark. at 242, 379 S.W.2d at 265.

[13] The warning for violation of the employer's policy is misdirection. It was not that he could not make his own decision about whether to commute but that he accepted the wrong monetary benefit.

[14] Restatement (Second) of Agency § 229, cmt. d (1958).

when driving to and from work in their own automobiles.[15] The employee is on his or her own time during a commute—the employer does not exercise control and should not be held vicariously liable for an employee's negligence during this time.[16]

If driving falls outside an employee's core job duties or responsibilities, then an employer cannot be held vicariously liable for an accident that the employee causes while driving to and from work. To hold otherwise would place employers in an impossible position. They could face unforeseen liabilities. Typically, an employer cannot foresee, let alone control, how its various employees drive to and from work every day. If the majority is creating exceptions to our general rule, it should say so. This would allow employers to foresee on the front end how decisions impact liability. Foreseeability matters.

Thus, I would affirm the circuit court's order granting summary judgment on the vicarious-liability claims. No material fact existed that would create a factual question about whether Conboy had been acting within the scope of employment when the accident occurred. For these reasons, I dissent.

HILAND and BRONNI, JJ., join.

*Murphy, Thompson, Arnold & Skinner*, by: *Bill Arnold* and *J.T. Skinner*, for appellant Estate of Tammy Gardner; *Denton, Zachary & Norwood*, by: *Joe Denton* and *Justin C. Zachary*, for Estates of Xavior Skala and Christopher Skala.

*WDTC LAW, P.A.*, by: *David Donovan* and *Staci Dumas Carson*, for appellees.

---

[15]*Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile*, 27 A.L.R.5th 174 (originally published in 1995) (collecting cases).

[16]*See Carter v. Reynolds*, 815 A.2d 460, 466 (N.J. 2003).